Stevens v. Faucet et al.

FLETCHER STEVENS, Plaintiff in Error, *v.* FREDERICK FAUCET *et al.*, Defendants in Error.

ERROR TO SUPERIOR COURT OF CHICAGO.

The intention of the parties, as expressed in their articles of agreement, must, as between themselves, be decisive of the question whether a partnership did or did not exist between them, and as to its extent.

A manufacturer, who makes a contract to deliver work, without requiring pre-payment, is held to have relinquished his lien on the manufactured article.

Trover will lie against one partner, who converts to his own use property which has been entrusted to his firm for manufacture.

THE defendants in error, Frederick Faucet, Samuel Isham and Thomas Faucet, filed in the Cook County Court of Common Pleas, their declaration, wherein they complain of Walter S. Stevens and Fletcher Stevens, defendants. For that, on the 10th January, 1857, they were possessed, as of their own property, of 9,000 sides of hemlock-tanned sole leather, of the value of $20,000 ; that they came to the possession of the defendants by finding, and that the defendants, well knowing, etc., on the day and year aforesaid, converted the same to their own use.

*Nolle 'prosequi* entered to defendant, Walter S. Stevens.

Plea of general issue filed for defendant, Fletcher Stevens.

On the trial, GOODRICH, Judge, presiding, plaintiffs proved the contract set out in the opinion, and that they furnished to the defendants 18,815 hides to be tanned, of which only 8,248 were returned to them ; that defendant, F. Stevens, shipped to Albany and other places a large quantity of these hides, which were sold to various parties, but a part of which, plaintiffs afterwards took

possession of, and sold. They also proved the value of the remaining hides, and the state of the accounts between the parties. Verdict for plaintiffs.

HOYNE, MILLER & LEWIS, for Plaintiff in Error.

SCATES, McALLISTER & JEWETT, for Defendants in Error.

CATON, C. J. The decision of this case depends entirely upon the determination of the question, whether, as between themselves, the firms of Stevens & Co., and Faucet & Co., were partners in the purchase and tanning of these hides, and the sale of this leather. If they were such partners, then the defendant below was a joint owner with the plaintiffs, of the leather which he surreptitiously took away and converted to his own use, for which this action of trover was brought. The agreement between the parties was this:

"It is this day agreed between Faucet, Isham & Co., of New York city, and W. H. and F. Stevens, of Stevensville, Sullivan county, New York, that said Faucet, Isham & Co. shall send to said W. H. and F. Stevens, what hides they may require for the purpose of being tanned, and manufactured into sole leather in their tannery, at said Stevensville, for three years from this date. The number of hides is not to be less than fifteen thousand each year, nor more than twenty-five thousand each year, unless both parties, in writing, shall hereafter agree to increase or lessen the amount.

"W. H. and F. Stevens, during the said three years, are not to tan hides for any other party. W. H. and F. Stevens agree to receive the hides at a dock in the city of New York, to pay all expenses of transportation to their tannery, to tan and manufacture them into sole leather in a good and workmanlike manner, to make leather of a quality and a gain in weight equal to that made by all first class tanners, and to return the leather so tanned to said Faucet, Isham & Co., at a dock in the city of New York, clear of all expenses of transportation. For all which services, Fauset, Isham & Co., agree to pay said W. H. and F. Stevens, five (5) cents per pound for each pound of leather so tanned and returned, which shall be due at the average time of each invoice.

"It is further agreed, that all the profit and loss on all the leather manufactured under this contract shall be equally divided between both parties, which shall be determined as follows: After said Faucet, Isham & Co. shall have sold the leather manufactured from each invoice of hides, they shall deduct from the gross amount of such sales the cost of the hides, with five per

cent. added thereto, the amount paid and payable for tanning. All costs and charges of cartage on both hides and leather, inspection, exchanges and interests on all these amounts, till the sales are due, by average. Also six per cent. on the gross amount of the sales, and the balance or difference, being gain or loss, shall be equally divided between said Faucet, Isham & Co., and said W. H. and F. Stevens. Faucet, Isham & Co. are to take the sole risk of all sales made on credit.

"W. H. and F. Stevens agree to return the leather from each invoice of hides within eight months from the time they leave the city of New York, provided that each invoice shall not exceed one thousand hides. In such case they agree to return them in a fair proportionate time; and provided further, that in case hides are sent faster than they can be worked, an allowance shall be made in proportion. Faucet, Isham & Co. shall procure what insurance against fire they may think necessary, one half the cost of which shall be paid by W. H. and F. Stevens.

"New York, Aug. 7, 1855."

As we are investigating this question of partnership, for the purpose of determining in whom the legal title to this leather was vested, it is of paramount importance to determine what was the intention of the parties on that point, as manifested by this agreement. It must be remembered that this is not a question between third persons and the parties to the agreement, growing out of the subject matter of the agreement, but it arises between, and affects only, parties to the agreement. In such a case the intention of the parties must control, in this as well as in all other agreements, when that intention can be satisfactorily ascertained by the terms of the agreement.

After the most careful and scrutinizing consideration we have been able to give this subject, we are well satisfied that it was the intention of the parties that the title to the hides and leather should all the time remain in Faucet, Isham & Co. By the first paragraph, Faucet, Isham & Co. agree to send what hides they may require to the Stevens, for the purpose of being tanned, for three years.

By the second paragraph, the Stevens agree not to tan hides *for any other party.* They agree to receive the hides, transport them to their tannery, to manufacture them into sole leather, and to return the leather, so tanned, to Faucet, Isham & Co., at a dock in New York, clear of all expenses of transportation. *For all which services* Faucet, Isham & Co. agree to pay the Stevens five cents per pound for each pound of leather so tanned and returned. Here is simply an agreement for work and labor of one party, to be performed upon the material of the other party, for a stipulated compensation, and so the parties

understood and intended. Of this there can be no doubt. More appropriate terms for expressing such intent could not have been selected.

The next paragraph stipulates, that the profit and loss, on all the leather manufactured under this contract, should be equally divided between both parties. And the balance of the paragraph shows what Faucet, Isham & Co. should charge against the proceeds of the leather when sold, in order to ascertain the gain or loss, which was to be equally divided between the two firms. This, no doubt, constituted a partnership, but in what, or to what extent, is the question to be determined. Was it the intention of this provision to change the relations which had been established in the preceding part of the agreement? We think it was, to the extent there stated, and no farther. It gave the Stevens a right to one-half the profits which Faucet, Isham & Co. should realize by the transaction, and obliged them to pay one-half the losses which should be sustained, but gave them no interest in, or title to, the hides or leather. It was manifestly still the intention of both parties that the title to the property should belong to Faucet, Isham & Co. If such was their intention, the partnership only extended to the proceeds of the leather, and not to the leather itself, or rather, to the profit or loss resulting from the transaction. Does the law forbid such an arrangement, when the parties so desire and design it? We think not.

Suppose, after what is now written in this agreement, the parties had added a declaratory clause, stating that it was not the intention of the parties to form a copartnership, either in the purchase of the hides, or in the manufacture or sale of the leather, but only that the Stevens should be entitled to an account after the leather was sold, and to share in the profits or loss, when ascertained. Had this been done, none will contend that this declaratory provision would be nugatory, as contrary to any established legal principle. We think the same intention of the parties is manifest from the terms which they have used in this agreement. It is as manifest that all parties intended that Faucet, Isham & Co. should own, hold, and control the hides and leather, as if it had been so declared in distinct terms, and in a separate clause. Indeed, to have inserted such a clause would have been but mere repetition, for the intention is as manifest now as it would be then. When the Stevens agreed to tan hides for Faucet, Isham & Co. for a stipulated price per pound, which the latter agreed to pay them, can any one doubt that it was the intention of both parties that the Stevens should have a right to sue the other parties at law for the price agreed upon? Was it the intention of either

party that Faucet, Isham & Co. should be liable to the workmen employed by the Stevens in the manufacture of this leather? And yet these consequences would follow, if they designed to form a partnership in the purchase of these hides and the manufacture of this leather. Such was clearly not their intention. Although sharing in the profits and loss of a concern or enterprise ordinarily creates a partnership in such concern or enterprise, between the parties thus sharing the profits and losses, yet it will not always do so. Suppose the third paragraph in this agreement had been omitted, and a third party had heard of the arrangement, and, believing it would be a profitable undertaking, had offered Faucet, Isham & Co. ten thousand dollars if they would pay to him one half of the profits which they should make by the operation, and they had accepted the offer; but they, being cautious men, and having some doubts of the success of the enterprise, gave another party five thousand dollars to insure them against loss, or had even purchased such insurance of the same party to whom they had sold the half of the profits, we conceive no partnership in the purchase of the hides and the manufacture of the leather would have been created between the parties to such an agreement, and for the very good reason, that it would not be their intention to create a copartnership. There would be no intention to vest in the party to whom they had sold a share of the profits, any title to, or interest in, the leather, but simply an interest in the profits. If the inquiry be made, why was this arrangement to divide the profits and losses made, if there was no design to create a partnership in the manufacture and sale of this leather, we think it is not difficult to answer the question. The inducements to this provision are quite obvious. The price agreed upon for tanning these hides was a low one. The evidence shows that the hides were about doubled in value by the process, and the price agreed upon for the manufacture of the leather was less than a quarter of its value when manufactured, leaving an apparent profit of more than fifty per cent. on the money which Faucet, Isham & Co. would be required to invest in the purchase of the hides. This could not have escaped remark in the negotiation, and if such profits should be realized, it was but reasonable that the manufacturers should receive a greater compensation for their labor. Both parties might well have deemed it for their mutual interests to provide that a part of the price for the work and labor to be performed, should be contingent, dependent, to a certain extent, upon the manner in which that work should be performed. In this way a higher inducement to perform the work well was presented, than if they

were to receive a fixed compensation to the full value of first-class work. This arrangement was, manifestly, but a mode adopted for part payment for the work to be performed. Such cases are almost of daily occurrence in the transaction of business and in the courts. The case of *Porter* v. *Ewing*, decided at this term, was one where a party was to receive compensation for services to be performed in an enterprise, by receiving half the profits resulting therefrom. There we held, that the party had no interest in the property bought and sold in the prosecution of the enterprise, but only in the profits, when profits should be realized and ascertained, although the party who was held not to be a partner, was, by the agreement, made the active man of the concern, and actually did all the buying and selling of the property.

We are well satisfied that it was the intention of all the parties to this agreement, that the title to this property should be be vested and continue in Faucet, Isham & Co., and that the defendant was liable to them for its conversion.

Some other minor questions were made, but one of which we deem it necessary to notice. It was objected, that the manufacturers had a lien on the manufactured articles for work bestowed upon it, and hence, they had such an interest in it as would protect them from an action of trover and conversion. By the provisions of the contract, they relinquished the right to such lien. They agreed to deliver the leather without requiring pre-payment for their work. This of itself would destroy the lien. But admitting such lien existed, this tort was committed by but one of the partners entitled to the lien, while the other was entirely innocent. The tort feasor could not, by his wrongful act, appropriate to himself the whole amount due to himself and his copartner. This conversion by one partner, would not justify Faucet, Isham & Co. in refusing to pay the other partner or the firm the amount due them for the work done.

We find no error in the record, and the judgment must be affirmed.

*Judgment affirmed.*