166     APPELLATE COURTS OF ILLINOIS.

Chicago G. W. R. Co. v. Am. McKenna P. Co. 200 Ill. App. 166.

## Chicago Great Western Railroad Company, Appellant, v. American McKenna Process Company, Appellee.

### Gen. No. 6,161.

1. LIENS, § 8*—*when lien for labor on chattels waived.* A laborer waives his right to a lien on chattels by giving time beyond the date of delivery for payment.

2. CONTRACTS, § 331*—*when stipulation for credit waived.* A stipulation in a contract for thirty days' credit after shipment of personal property upon which labor is to be performed is waived where the laborer requests payment without shipment and the owner complies with such request.

3. CONTRACTS, § 263*—*when party may not rescind contract in part.* A party in order to obtain the benefit of a provision of a contract favorable to him must conform to other provisions not in his favor.

4. CONTRACTS, § 253*—*what is effect of modification of in part.* A contract may be varied as to one of its provisions without affecting the liability of the parties under its other terms and conditions, unless such conditions are directly related to the modified condition, in which case the related conditions are also modified.

5. ASSUMPSIT, ACTION OF, § 70*—*when recovery may be had under common counts for labor performed.* Where a contract for labor is substantially varied by subsequent agreement as to require more time and greater expenditure on the part of the plaintiff to complete the performance of it, he is not obliged to sue on the original contract but may recover on the common counts.

6. ASSUMPSIT, ACTION OF, § 70*—*what is extent of recovery for labor in action on quantum meruit.* Where work is done under a special contract, the price must be governed by the stipulations of the contract, even when the plaintiff is justified in abandoning the contract and bringing his action for *quantum meruit.*

7. CONTRACTS, § 187*—*what is effect of construction by parties in determining rescission or abandonment of.* The construction placed upon the provisions of a contract by the parties is of great weight and often controlling in cases of doubt whether such changes and noncompliance exist as to permit a party to treat the contract, or a provision of it, as rescinded or abandoned.

8. LIENS, § 2*—*when lien for labor on chattel exists.* As a general rule a lien for labor on a chattel exists only when the laborer enhances the value.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Chicago G. W. R. Co. v. Am. McKenna P. Co. 200 Ill. App. 166.

9. APPEAL AND ERROR § 1679*—*when variance waived.* A variance between allegations and proof is waived if not suggested in the trial court.

10. APPEAL AND ERROR, § 1466*—*when admission of evidence as to value of services harmless error.* The admission of evidence of the plaintiff as to the reasonable value of services in rehandling rails in an action to recover for such services, when there was no proof as to the market value of the labor, *held* to be harmless error where no motion was made to exclude the evidence and no effort was made to show that the charge was excessive or unreasonable.

11. APPEAL AND ERROR, § 1470*—*when proof of contents of letter without proof of its loss harmless error.* Proof of the contents of a letter without proof of its loss is harmless error where such evidence adds nothing material to what is already in the case.

12. TRIAL, § 130*—*when remarks of counsel improper.* It is improper for counsel for the plaintiff in action against a railroad company to call the defendant the "black sheep" of the railroad business in his address to the jury.

13. APPEAL AND ERROR, § 1514*—*when improper conduct of counsel in addressing jury harmless error.* In an action against a railroad company, the action of the attorney for the plaintiff in calling the defendant the "black sheep" of the railroad business, *held* not reversible error under the condition of the record.

Appeal from the Circuit Court of Will county; the Hon. ARTHUR W. DESELM, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed February 8, 1916. *Certiorari* denied by Supreme Court (making opinion final).

J. L. O'DONNELL, T. F. DONOVAN and J. A. BRAY, for appellant; WINSTON, PAYNE, STRAWN & SHAW, of counsel.

SNAPP, HEISE & SNAPP, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

The appellant, Chicago Great Western Railroad Company, brought this action of replevin for about 122 tons on its rails in the possession of the appellee, American McKenna Process Company, which held them on claims of liens for labor. A jury trial resulted in a judgment in the alternative, as provided in section

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

168    APPELLATE COURTS OF ILLINOIS.

Chicago G. W. R. Co. v. Am. McKenna P. Co. 200 Ill. App. 166.

22 of our Replevin Act (J. & A. ¶ 9207), that the plaintiff pay the amount claimed or make return of the property, from which judgment this appeal is prosecuted.

There is practically no controversy about the evidentiary facts. There was a written contract of July 13, 1911, that appellee should re-roll at its Joliet plant 5,000 tons of appellant's rails, approximately 3,000 tons to be delivered immediately and work begun at once, the balance to be delivered not later than June 1, 1912. The price was fixed at $5 per ton if appellant delivered the full amount of 5,000 tons, or $6 per ton if a less amount was delivered within the time named, payment to be made within thirty days from the date of shipment of finished rails by appellee. It is a fair construction of the contract that appellant should receive the rails from time to time as they were finished in the ordinary course of business. Appellant commenced to forward rails in August, and before December 11, 1911, had shipped about 2,700 tons, which were received by appellee, sorted out into various grades prepared for re-rolling, and piled in its yard. For various reasons appellant did not wish the work done at the time contemplated by the contract, and on December 23, 1911, a supplemental contract was, at the instance of appellant, executed providing that these rails in the yard of appellee might remain there the property of appellant until they should be re-rolled and reshipped. Appellant forwarded no more rails, and from time to time answered appellee's urgent insistence that it be permitted to go on with the work with the request that it be deferred because it, appellant, was not in condition to receive and use the rails. Finally on July 29, 1912, appellee commenced re-rolling the rails and continued until about August 5, 1912, finishing in that time about 1,245 tons, which were inspected and passed by an agent of appellant, and eleven cars loaded for ship-

ment, when appellant notified appellee that it would not then receive the rails and they were consequently unloaded and again stored in appellee's yard. No more rails were re-rolled. What remained of the 2,700 tons was shipped out on appellant's order and fifty cents a ton charged and paid for handling them. Appellant sold the finished rails to the Pere Marquette Railroad Company, and this sale made necessary another inspection by parties representing that company, which required much manual labor in handling the rails, and that labor was furnished by appellee at the request of appellant. Under the second inspection the rails were divided into different grades and some changes made by way of shortening some of the rails, and taking twists out of others. In November, 1912, while the finished rails were still in the yard, appellee requested payment at $6 a ton on an estimated amount of the finished rails, which appellant paid, and at the same time appellee shipped to the order of appellant all the finished rails except about 122 tons, which still remained in its yard. September 6, 1913, appellee sent appellant a bill based on the actual weight of the finished rails, showing a balance due for re-rolling of $526.02, about which there is no controversy, and also included in the bill a charge of fifty cents a ton ($666.33) for extra handling required by said second inspection. Appellant objected to the charge for extra handling, and paid no part of the bill, but after demand and refusal to deliver, took the rails on the writ of replevin issued in this case. A declaration was filed in the usual form, and appellee's defense rests on two special pleas in each claiming a lien, one setting up the charge of $526.02 for re-rolling, and the other a charge of $1 a ton ($1,332.67) for extra handling.

The controlling question is whether appellee was entitled to hold the rails until its charge for labor was paid. It is claimed that because of the provision in the

original contract for thirty days' credit after shipment
by appellee, no right of lien could exist, and many
authorities are cited to the effect that a laborer waives
his right of lien by giving time beyond the date of de-
livery for payment. This is no doubt the law. *Stevens
v. Faucet,* 24 Ill. 483; 25 Cyc. 674. It is also obvious
that if appellee was under an obligation to deliver
these rails on demand and wait thirty days for pay-
ment, it could not ground a defense in a replevin suit
on the fact that payment before delivery was refused.
It is claimed by appellee that the stipulation in the
original contract of July 13, 1911, for thirty days'
credit was waived by appellant and was not binding on
appellee at the time of its refusal to deliver the rails.
Appellee bases this contention on the consideration
that the contract containing this stipulation provided
for immediate delivery after July 13, 1911, of 3,000
tons of rails by appellant, which were to be immedi-
ately re-rolled and reshipped to appellant in the ordi-
nary course of business, and paid for by appellant in
thirty days after shipment; that appellant did not per-
form this essential part of its contract, but shipped
2,700 tons and asked for and obtained a written modi-
fication of the contract as to the time within which the
work should be done, under which modification appel-
lee was to do the work within a reasonable time, but
that appellee from time to time deferred the work at
the urgent insistence of appellant, leaving the rails
stored in its yard and subjecting itself to much trouble
and inconvenience in so doing, which was repeatedly
stated to appellant and well understood by it; that
finally long after these rails would have been re-rolled
and reshipped and paid for if the original contract had
been complied with, appellee, while the rails were still
in its yard, requested payment based on an estimate
which covered nearly all of its charge for re-rolling.
By this request for payment without shipment, appel-
lee treated the stipulation for credit as no longer in

SECOND DISTRICT—FEBRUARY, 1916.     171

Chicago G. W. R. Co. v. Am. McKenna P. Co. 200 Ill. App. 166.

force, and appellant, by complying with this request, acquiesced in that construction. We think this position of appellee well taken. A party in order to obtain the benefit of a provision of a contract advantageous to him must conform to other provisions not in his favor. *Babcock v. Farwell,* 245 Ill. 39; *Graham v. Holloway,* 44 Ill. 385; *Harrison v. Polar Star Lodge,* 116 Ill. 279; *Hale v. Bryant,* 109 Ill. 34; *Lasher v. Loeffler,* 190 Ill. 150; *Mount v. Williams,* 11 Wend. (N. Y.) 77. A contract may be modified as to one of its provisions without affecting the liability of the parties under its other terms and conditions, unless such conditions are directly related to the modified condition, in which event the related conditions must be held also modified. (35 Cyc. 127.) Where a contract is varied by subsequent agreement so as to require more time and greater expenditure on the part of a plaintiff to complete the performance of it, he is not obliged to sue on the original contract but may recover on the common counts. 9 Cyc. 690; *Huehl v. Monarch Refrigerating Co.,* 157 Ill. App. 145; *Anglo-Wyoming Oil Fields v. Miller,* 117 Ill. App. 552. But where the work is done under a special contract, as in this case, the price must be governed by the stipulations of that contract, even when the plaintiff is justified in abandoning the contract and bringing his action for the *quantum meruit.* *W. H. Purcell Co. v. Sage,* 200 Ill. 342; *Rice v. Partello,* 88 Ill. App. 52, and Illinois cases there cited. We assume that the above mentioned rules governing the right of a party to a contract to treat it as rescinded or abandoned must be applied only where there have been substantial changes in the contract, or substantial noncompliance by the other party, but in cases of doubt whether such changes and noncompliance exist as to permit a party to treat the contract or a provision of it, rescinded or abandoned, then, as in all cases of interpretation of doubtful contracts, the construction placed

on its provisions by the parties to the contract is of great aid and often controlling. *W. H. Purcell Co. v. Sage, supra.* We are of the opinion that the changes in the original contract made at the instance of appellant and for its advantage, and against the constant contention of appellee and to its disadvantage, justified appellee in at least asserting that the stipulation for credit was abandoned because of its relation to the other provisions that had been abandoned. It was certainly equitable that it should be so treated, and when appellant acquiesced in this assertion by paying what was estimated to be the amount of the bill for re-rolling before the rails were delivered, it should not be permitted to set up that same provision for credit to defeat a recovery in this action for the little balance that was found on actual weight of the rails not covered by the estimate. Under this view of the case the verdict and judgment were properly for appellee under its special plea of lien for the payment of $526.02 due for re-rolling. But the verdict also allowed the amount of $1,332.67 claimed for rehandling, and the judgment covered that amount. Appellant argues that judgment on this plea is bad because the rehandling did not enhance the value of the rails, and a lien only exists where the work of a laborer enhances value. This is true as a rule, but in applying it, "value" does not always mean market value. If an owner of property employs a mechanic to change its character to satisfy some special use or even whim of the owner, the mechanic is not deprived of his right of lien because the article may have less market value after it is finished than it had before. But it is not necessary to much consider this rule of law here. The evidence shows that by the work done as a part of the second inspection, resorting the rails, straightening some of them and shortening some of them, their market value was increased. But it is argued that the plea counted on storing, handling and care of the rails, and that the

added value from straightening and shortening some
of the rails comes under none of those designations,
therefore that there was a variance between the alle-
gations and the proof.  And while it is admitted that
this evidence was not objected to and the variance was
not pointed out in the trial below, it is claimed to be so
substantial a departure from the pleadings as to be fa-
tal.  We do not think this position well taken.  If the
work proven was not technically covered by the change
"handling" (and we do not say it was not), the vari-
ance could have been easily remedied by amendment
had it been suggested on the trial, and the familiar
rule that a variance is waived if not suggested in the
trial court should be applied.  Appellant also urges
that there is no competent evidence that the services of
appellee in rehandling the rails were reasonably worth
$1 a ton, and no proof as to the market value of such
labor, and calls our attention to the fact that in the bill
originally rendered only fifty cents a ton was charged
for the service.  The proof on this subject was not con-
tradicted, but was to the effect that the cost of rehan-
dling—of the extra work—was not less than $1 a ton,
and was probably over $1 a ton, and while in a letter
accompanying appellee's bill for fifty cents a ton it
said it was a usual charge, it appeared on the trial that
appellee had done none of this kind of work before;
that there was no usual charge, and from the nature of
the work, it is quite apparent that there could be no very
customary charge anywhere for that kind of labor.
There was no motion made to exclude this evidence,
and no effort to show that the charge was excessive or
unreasonable.  We think, under this condition of the
record, the admission of this proof and the use of it
by the jury as a foundation of their verdict should
not be held reversible error.  *Schmitt v. Kurrus,* 234
Ill. 578.  It was held in *Travis v. Pierson,* 43 Ill.
App. 579, that in the absence of anything indicating
bad faith what one had actually paid for service is ad-

174 · APPELLATE COURTS OF ILLINOIS.

Chicago G. W. R. Co. v. Am. McKenna P. Co. 200 Ill. App. 166.

missible in evidence to show what the reasonable cost of such service is, and while the rule as there announced may not be one of general application and may not warrant the retention of such testimony on motion to exclude it, still we think in the absence of such motion that it should not be allowed to work reversible error in a case where it is quite clear that the services were reasonably worth the amount claimed.

It is urged that the court erred in permitting evidence of the contents of a letter to go to the jury without proper proof of the loss of the letter. It was a note handed an agent of appellee by an agent of appellant directing appellee to permit the second inspection of the rails above mentioned. It is not material here whether the court technically erred or not in permitting the proof of the contents of the note. There had been oral proof introduced that appellant had authorized such inspection, and among the stipulated facts read to the jury it is recited that: "In compliance with said request of the railroad company, the process company rehandled the said rails for the purpose of inspection." Proof of the contents of the letter in question in no way added or subtracted from anything material otherwise in the case. Appellant also argues several objections to the instructions given at the instance of appellee. If we are right in our conclusions of law before expressed, there is no substantial error in the instructions. On the plea claiming a lien for balance due for re-rolling the rails, the defendant was entitled to a directed verdict. On the other plea claiming a lien for services in rehandling, if the evidence as to the value of those services is as matter of law a competent basis for a finding of the jury, their verdict was right as to the whole amount. There is no evidence in the record upon which they could intelligently base a different finding. Objection is also urged to a remark of appellee's counsel in his address to the jury in

SECOND DISTRICT—FEBRUARY, 1916.     175

which he characterized appellant as the black sheep of the railroad business. Objection was made to that remark and the court overruled the objection. We think the remark improper, and the ruling of the court error, but in the condition of the record as just pointed out, we see no reason for holding it reversible error. Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*