General Motors Acceptance Corporation, a Corporation, Plaintiff-Appellee, v. Norman Allen, Peter Weck, d/b/a Peter Weck's Auto Service, John Doe and Mary Roe, Defendants-Appellants.

Gen. No. 49,348.

First District, Third Division.

September 4, 1964.

Rappaport, Clorfene & Rappaport, of Chicago (Hamilton Clorfene, of counsel), for appellants.

Harry Jaffe, of Chicago, for appellee.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

The defendants Peter Weck, individually, and Peter Weck's Auto Service, Inc. (Weck), appeal from a

judgment for $525 plus costs entered against them in a suit for conversion of an automobile. The issue involves a dispute between Weck, an automobile repair man who had possession of the automobile, and General Motors Acceptance Corporation (GMAC), a conditional vendor claiming a superior lien. Defendant Norman Allen was the conditional purchaser of the automobile. No order was entered with respect to Allen, and he is not a party to the appeal. The only issue on appeal, as set forth in defendants-appellants' Points and Authorities, is whether GMAC had possession or the immediate right to possession of the automobile and is therefore able to maintain this action for conversion.

On August 27, 1959, Norman Allen purchased a used 1957 Buick automobile from Boulevard Buick in Chicago, paying part cash and entering into a retail installment or conditional sales contract for the balance. Full payment was to have been made by October 1961. The conditional sales contract, which was immediately assigned by Boulevard Buick to GMAC, provides that for the purpose of securing payment, the seller reserves title and shall have a security interest until fully paid; that no assignment shall release the buyer from his obligation; that in the event of assignment of the seller's rights thereunder, the word "seller" shall be understood as referring to the subsequent holder of the contract (that is, plaintiff GMAC) under such transfer or assignment of the seller's rights; that the buyer shall keep the automobile free from all taxes, liens and encumbrances; and that in the event the buyer defaults in any payment due or fails to comply with any of the conditions of the contract or the seller deems the property in danger of misuse or confiscation, the seller shall have the right to declare the unpaid balance due and payable and, further, in any such event, the seller or any sheriff or

other officer of the law may take immediate possession of the property without demand, and for that purpose the seller may re-enter the premises where the property may be and remove it.

In May 1962 Allen took the car to Weck's garage and ordered certain repairs. The cost of the repairs (about $360 according to Allen, and about $560 according to Weck) was more than Allen could pay and he was unable to borrow the money. Allen notified GMAC of this fact and after several conversations with Weck, GMAC and Weck were unable to arrive at an agreement to finance the cost of the repairs. There was evidence to indicate that GMAC offered to finance the repairs upon receipt of an itemized repair bill, but that Weck refused the offer unless GMAC agreed to pay for repairs Weck had made on another car, unrelated to Allen's.

On August 10, 1962, GMAC sued out a writ of replevin against defendants-appellants which was returned "property refused." When the deputy sheriff went to Weck's garage to serve the writ, the automobile was in the garage on a lift, Weck was present along with a Frank Smith upon whom the writ was served, and Weck refused to give up the car to the sheriff, locking the inside garage door, and claiming he had a mechanic's lien for services rendered. Weck denies that he was present on that day.

An amended complaint in trover was filed by GMAC on October 22, 1962, stating that defendants-appellants were in lawful possession of the automobile in question for the purpose of making repairs prior to August 10, 1962; that on August 10th defendants-appellants unlawfully converted and disposed of the property to their own use, and that demand being made upon them for the return of the property, they unlawfully detained and secreted it. The amended complaint also charged that malice was the gist of the

action and that the automobile was of the value of $500. On August 10, 1962, Allen owed GMAC $280.61 on its installment sales contract and was obviously in default thereon, since all payments should have been made by October 1961. A trial followed, with a judgment for $525 plus costs in favor of plaintiff. This appeal followed.

■ The priority of plaintiff's right to possession under the provisions of the conditional sales contract over the lien of the garage owner for repairing and storing the automobile is not questioned. The authorities so hold. Standard Motors Securities Corp. v. Yates Co., 257 Ill App 394; General Motors Acceptance Corp. v. Goldboges, 260 Ill App 474; Motor Acceptance, Inc. v. Newton, 262 Ill App 335.

■ Defendants argue, however, that it is essential that the plaintiff at the time of the conversion should have not only the right of property in the chattel, but also have the right to immediate possession. Plaintiff argues that under the provisions of the retail installment sales contract it could consider the contract in default and that it was therefore entitled to immediate possession if, among other things, the conditional purchaser encumbered the automobile or defaulted on his time payments. Allen had encumbered the automobile with a garageman's lien and was in default in his time payments and therefore, under the contract, GMAC had the right to repossess the car. In the three cases hereinbefore cited, holding that the lien of the conditional vendor under a retail installment sales contract is superior to that of the garage owner, the finance company under a conditional sales contract sought by a writ of replevin to obtain the automobile from the garage where it had been placed for repairs by the conditional purchaser. In each case the finance company was permitted to replevin the automobile. The only distinction is that in the instant

117

case the garage owner having refused to surrender the property when the replevin writ was served, the plaintiff took the proper course and amended its complaint to state a cause of action for conversion.

■ Defendants-appellants point to several inconsistencies and omissions in the record in order to obtain a reversal. They point to a divergence of one digit between the serial number of the automobile as described in the writ of replevin and the description in the certificate of title. They also charge failure on the part of plaintiff to make a demand upon defendants-appellants for the return of the automobile before service of the replevin writ and failure to serve the writ upon defendant Peter Weck. Defendants-appellants, however, have failed to preserve these points for review. The Civil Practice Act (Ill Rev Stats c 110, § 68.1(2) (1963)) provides that:

> ". . . (t)he post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired, as for example, the entry of a judgment, the granting of a new trial or other appropriate relief. Relief sought in post-trial motions may be in the alternative or may be conditioned upon the denial of other relief asked in preference thereto, as for example, a new trial may be requested in the event a request for judgment is denied. A party may not urge as error on review of the ruling on his post-trial motion any point, ground or relief not particularly specified in the motion."

The post-trial motion specified only three points: (1) that the judgment was against the manifest weight of the evidence; (2) that the judgment was contrary to law; and (3) that the plaintiff was merely a lien holder and not entitled to bring suit for conversion. Only the third point was argued in the brief.

118

No point was made by defendants-appellants concerning the amount of the judgment in its post-trial motion nor in the statement of the Points and Authorities of its brief. Therefore we will not consider it. Ill Rev Stats ch 110, § 68.1(2) (1963).

Judgment affirmed.

DEMPSEY and SULLIVAN, JJ., concur.