2 Ill. App.3d 699 (1971)
276 N.E.2d 809
TOWN HOUSE MOTEL, INC., Plaintiff,
v.
RICHARD T. WARD et al., Defendants,  (FIRST NATIONAL BANK OF BELLEVILLE, Intervenor-Appellant.)
No. 70-33.
Illinois Appellate Court  Fifth District.
December 6, 1971.
*700 C.E. Heiligenstein, of Belleville, for appellants.
Eugene H. Widman, of Belleville, for appellee.
Reversed and remanded.
Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:
Town House Motel, Inc., obtained a judgment against Richard T. Ward and Virginia M. Ward in the sum of $3,820.29. Thereafter a levy on the defendants' personal property was had and the Wards' 1967 Chrysler was seized. On December 1, 1967 the vehicle was sold at a sheriff's sale and purchased by the only bidder, Town House Motel, for the sum of $2,600. Subsequently a certificate of title was obtained from the Secretary of State of Illinois in the name of the motel and the car was then sold to an out-of-state dealer.
In February, 1968, the First National Bank of Belleville, hereinafter referred to as the Bank, filed an intervening complaint which alleged that the automobile had been titled in Ohio and bore 1967 Ohio license plates; that the Bank possessed the Ohio title upon which a chattel mortgage was indicated; that on October 21, 1967, there was due from the Wards the sum of $2,353 on said automobile; that the Town House Motel knew or should have known that the car was subject to a lien; that the levy, execution, and sale were in violation of the mortgage interest of the bank; and that the bank be awarded damages from Town House Motel in the amount of the lien and costs. The Motel denied the material allegations of the complaint and further stated that it made a diligent search of available public records in the county and state and made inquiry for the purpose of ascertaining whether or not a notice of lien was filed in the county or state.
At the trial an officer of the bank testified that Richard Ward was a *701 major in the Air Force, stationed at Scott Air Force Base and that in the past Major Ward had financed the purchase of cars through the Bank. In February of 1967 the Bank made a loan on the Chrysler Automobile. An Ohio certificate of title was issued in the name of Major Ward with an address in Lorain, Ohio. The certificate of title indicated that there was a chattel mortgage lien held by the Bank and this lien was recorded in Lorain County, Ohio. Monthly payments were made by Major Ward through October, 1967. In November of 1967 Major Ward called Mr. Stafford at the Bank and wanted to know if the Bank had repossessed his automobile. He was informed that the Bank had not repossessed his automobile and that actually he was ahead of schedule in his payments. On December 19 Major Ward again called after he had received a past due notice from the Bank. Mr. Stafford then went to the St. Clair County Court House and talked to a deputy sheriff, Paul Haas, who showed him that the car had been received by the sheriff under a levy and that it had been sold on December 1 to the Motel.
Paul Haas was a deputy sheriff of St. Clair County and also an officer of the Town House Motel. He knew that Major Ward was an Air Force officer and stationed at Scott Air Force Base. Major Ward had entered into a contract with the Motel and the resulting judgment related to that contract. Haas was the deputy who picked up the automobile and at that time it had Ohio plates. He realized that since the automobile was licensed in Ohio there would have to be some registration or license application filed in that state. Mr. Haas also testified that prior to the seizure and sheriff's sale, he knew there was a lien or loan against the car. Prior to the sale, Mr. Haas checked the Recorder of Deeds Office in St. Clair County, Illinois and did not find any record of any lien. Notice of the sale was then given and Mr. Haas conducted the sale on behalf of the sheriff. Mr. Rapp, President of the Motel, was the only bidder present and the car was sold to him as a representative of the Motel. Thereafter, Mr. Haas went to the Secretary of State's Office in Springfield, Illinois, to obtain an Illinois title for the car.
There is some dispute in the testimony of the Bank officials and Haas as to their first conversation regarding this car. Mr. Stafford testified that at the time of their conversation on December 19 Haas told him that he had not yet obtained an Illinois title for the vehicle, but that there would be no difficulty in getting the title despite the Bank's lien. Glen Holtz, also a Bank employee, testified that on December 19 he and Mr. Stafford presented evidence of the Bank's lien to Haas and were told that although the Motel did not yet have an Illinois title, there would be no difficulty in obtaining one. Haas testified that he had obtained the Illinois title on December 2 or 3 and before any conversation with Bank officials. When *702 Haas went to Springfield, he did not tell the Secretary of State's office that he suspected that there was a lien against the car.
The trial court, sitting without a jury, found that the Motel perfected title to the said automobile and that the Bank failed to secure its interest in the Recorder's Office of St. Clair County or the Secretary of State's Office for the State of Illinois and dismissed the Bank's complaint. The Bank appeals.
It is undisputed that a certificate of title on the automobile was issued by the State of Ohio and the security interest of the Bank was noted thereon and perfected under the law of Ohio. The issue presented is whether the Bank was required to have a certificate of title issued by the State of Illinois with its security interest noted thereon in order to protect its lien and security interest as against the Motel.
There are two statutes to be considered. The Bank contends that section 9-103(4) of the Uniform Commercial Code (Ill. Rev. Stat., ch. 26, par. 9-103(4)) is applicable, whereas the Motel contends that section 3-202 of the Illinois Vehicle Code (Ill. Rev. Stat., ch. 95-1/2, par. 3-202) applies. Section 9-103(3) of the Uniform Commercial Codes provides that if personal property is already subject to a security interest when brought into Illinois, the validity of the interest is to be determined by the law of the jurisdiction where the property was when the interest attached. This section goes on to provide that if at the time the interest attached, the parties understood that the property would be kept in Illinois and it was brought into this state within 30 days after the interest attached for purposes other than transportation through the state, then the validity of the security interest in this state is to be determined by the law of this state. This section further provides that if the interest was already perfected under the law of the jurisdiction where the property was when the interest attached, the interest continues in this state for four months and also thereafter if it is perfected in this state within the four-month period. Section 9-103(4) provides:
"Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of this jurisdiction, which issued the certificate."
Section 3-202 of the Illinois Vehicle Code provides:
"(a) Unless excepted by Section 3-201, a security interest in a vehicle of a type for which a certificate of title is required is not valid against subsequent transferees or lienholders of the vehicle unless perfected as provided in this Act.

*703 (b) A security interest is perfected by the delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within 21 days thereafter, otherwise as of the time of delivery.
(c) If a vehicle is subject to a security interest when brought into this State, the validity of the security interest is determined by the law of the jurisdiction where the vehicle was when the security interest attached, subject to the following:
1. If the parties understood at the time the security interest attached that the vehicle would be kept in this State and it was brought into this State within 30 days thereafter for purposes other than transportation through this State, the validity of the security interest in this State is determined by the law of this State.
2. If the security interest was perfected under the law of the jurisdiction where the vehicle was when the security interest attached, the following rules apply:
(a) If the name of the lienholder is shown on an existing certificate of title issued by that jurisdiction, his security interest continues perfected in this State."
The Motel contends that the Bank failed to perfect its lien in Illinois as prescribed in section 3-202 of the Illinois Vehicle Code. Subsection (b) of 3-202 provides the method for perfection and specifies that an application for a certificate of title be made to the Secretary of State. However, Section 3-102 of the Illinois Vehicle Code states that a certificate of title need not be obtained for a vehicle owned by a non-resident of this state and not required by law to be registered in this state. Although there was evidence that Major Ward had purchased a home in Belleville, Illinois, and engaged in the operation of a lounge on the Motel's premises, there was also evidence that he was a member of the military stationed at Scott Air Force Base. It is not unusual for members of the military to continue to register their automobiles in other states, even though temporarily living in this state because of the military assignment. Since an Illinois certificate of title was not required, subsection (b) is not applicable. Neither is subsection (c) of 3-202 applicable because (c) applies only to motor vehicles purchased in other states and brought into Illinois. Since the car purchased by Major Ward was purchased in Illinois and was not brought in from another state, subsection (c) is also inapplicable.
The Motel contends that section 9-103(4) of the Uniform Commercial Code cannot apply because paragraph 3-207 of the Illinois Motor *704 Vehicle Act provides the exclusive method in Illinois for perfecting security interests in motor vehicles. Section 3-207 reads: "The method provided in this act of perfecting and giving notice of security interests subject to this act is exclusive. * * *"
 1-4 In our opinion the motor vehicle in question was not subject to the Illinois Motor Vehicle Act and therefore section 3-207 has no application. Were we to hold otherwise, we would be compelled to hold that section 3-207 of the Illinois Motor Vehicle Act repeals section 9-103(4) of the Uniform Commercial Code by implication. Both Chapter 95-1/2, par. 3-202 and ch. 26, par. 9-104 apply to motor vehicles. The Committee Comments to 9-104 states: "This section applies to personal property covered by a certificate of title, principally motor vehicles." Where two statutes are enacted which have relation to the same subject, the earliest continues in force unless the two are clearly inconsistent with and repugnant to each other or unless in the latest statute some express notice is taken of the former plainly indicating an intention to repeal it, and where two acts are seemingly repugnant, they should, if possible, be so construed that the later may not operate as a repeal of the former by implication. It is not enough to justify the inference of repeal that the subsequent statute covers some, or even all, of the questions covered by the former. There must be an irreconcilable repugnancy. (People v. Board of Education, 349 Ill. 390; Caruthers v. Fisk University, 394 Ill. 151, 162.) We find no irreconcilable repugnancy between section 9-104 of the Uniform Commercial Code (Ill. Rev. Stat. ch. 26, par. 9-104) and section 3-202 of the Illinois Vehicle Motor Act. (Ill. Rev. Stat. ch. 95-1/2, par. 3-202.) Therefore, both sections can be construed so that both are operative.
 5, 6 The basic structure of Article 9 of the Uniform Commercial Code was to provide for the creation of a security interest with an established priority and a means of giving notice of that interest to third parties. (See Introductory Comment, Ill. Rev. Stat., ch. 26, par. 9.) The Bank did establish its priority and notice of that interest was given to third parties, including the Motel. The Motel knew the automobile was bearing Ohio license plates and thus knew that some registration or application for license was filed in that state. The Motel also knew that Major Ward was in the military. Likewise, it had knowledge through its treasurer, Paul Haas, that there was some lien against the automobile. Since the evidence is undisputed that the Bank did perfect its lien in Ohio, we hold that the provisions of section 9-103(4) of the Uniform Commercial Code apply to the present action.
There is no dispute about the amount of the bank's lien. The evidence *705 at trial was that the lien amounted to $2,458. Accordingly, judgment of the trial court is reversed and remanded with directions to enter judgment in favor of the bank in the amount of the lien.
Reversed and remanded with directions.
EBERSPACHER, P.J., and JONES, J., concur.