NATIONAL BANK OF JOLIET, Plaintiff-Appellant, *v.* BERGERON CADILLAC, INC., Defendant-Appellee.

Fourth District    No. 12653

Opinion filed May 13, 1976.—Rehearing denied June 16, 1976.

CRAVEN, J., dissenting.

Marvin H. Gesell and Thomas R. Iben, both of Arnold & Gesell, of Bloomington, for appellant.

Bernard E. Wall and John Naylor, both of Bloomington, for appellee.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

In February, 1973, the plaintiff bank became a creditor of one Schmidt with its security interest in one Cadillac automobile shown on the

certificate of title issued by the Secretary of State.[1] In August, 1973, Schmidt took the Cadillac to defendant, who made repairs which totaled some $2000 for services and material.

In September, 1973, the Schmidt loan became delinquent and in October plaintiff learned that the Cadillac was in the possession of the defendant.

When Schmidt failed to pay for the repairs, defendant made inquiry and learned of plaintiff's security interest shown on the certificate of title. Defendant then determined to retain possession. Defendant's answer to plaintiff's action in replevin claims a prior lien for repairs by reason of its possession under section 9—310 of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 9—310).

The trial court found that defendant had a valid common law possessory "mechanic's lien" independent of any statutory lien and that such lien was recognized under section 9—310 of the Uniform Commercial Code as superior to the statutory security interest of the plaintiff. The plaintiff appeals.

In the older texts the common law lien described appears to have been limited to a right to retain possession of the chattel until the charges for services and material were paid. There was no provision for foreclosure and no right to sell the property to satisfy such lien. (25 Cyclopedia of Law & Procedure 661; 37 C.J. 340, *Liens*, §63 (1925).) Such common law lien has consistently been recognized by the courts in this State. *Stevens v. Faucet*, 24 Ill. 483; *Chicago Great Western R.R. Co. v. American McKenna Process Co.*, 200 Ill. App. 166; *Rehm v. Viall*, 185 Ill. App. 425.

Thus, the "Garage Keeper's Lien Act" of 1917, which authorized enforcement of the lien for labor and materials by sale after notice was held to be "not declaratory of a common law lien," but a statutory lien. *(Jensen v. Wilcox Lumber Co.*, 295 Ill. 294, 129 N.E. 133.) In *Ehrlich v. Chapple*, 311 Ill. 467, 143 N.E. 61, there was claim of an "artisan's lien" with possession retained asserted as against a prior recorded chattel mortgage. It was held that such claim of lien was subordinate to a "vested property right" created by the chattel mortgage which, under the Constitution, would not be taken away by the legislature. It was said that the artisan's lien was limited to the mortgagor's interest. See also *Nathan M. Stone Co. v. Ellerson*, 230 Ill. App. 593.

Similarly, a contract interest under a conditional sales contract was held to have priority over a claim for repairs by a garage or mechanic who retained possession of the automobile. (See *General Motors Acceptance Corp. v. Allen*, 52 Ill. App. 2d 114, 201 N.E.2d 747, and the cases cited therein.) In *Motor Acceptance, Inc. v. Newton*, 262 Ill. App. 335, it was

---

[1] Ill. Rev. Stat. 1973, ch. 95½, par. 3—202.

held that the statutory lien for labor and services was subordinate to the contract right under a conditional sales contract, and that any other construction would be unconstitutional.

Effective on July 1, 1962, the title retaining provisions of a conditional sales contract under section 20 of the Uniform Sales Act (Ill. Rev. Stat. 1961, ch. 121½, par. 20) and the interest created by chattel mortgage found in the mortgage act (Ill. Rev. Stat. ch. 95, par. 1 *et seq.*) were repealed. On the same date, the Uniform Commercial Code became effective. Such code does not contain provisions for title or contract claims as were found in the repealed statutes. Hence, it has been said that the precedent found in cases decided prior to July 1, 1962, does not apply to cases arising thereafter. *Westlake Finance Co. v. Montgomery*, 64 Ill. App. 2d 347, 213 N.E.2d 34.

The Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 9—310) provides:

> "When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise."[2]

The comment accompanying the statutory provision makes the priority of such lien for services and material applicable where such are furnished in the ordinary course of established business and possession is retained by the supplier. Such comment is explicit that the decisions in *Ehrlich v. Chapple*, 311 Ill. 467, 143 N.E. 61, and *Nathan M. Stone Co. v. Ellerson*, 230 Ill. App. 593, are to be extirpated.

The concept of the Uniform Commercial Code, section 9—310, has been adhered to in *Westlake Finance Co. v. Spearmon*, 64 Ill. App. 2d 342, 213 N.E.2d 80, and *Pennington v. Alexander*, 103 Ill. App. 2d 145, 242 N.E. 2d 788. In *Pennington*, the court refused to pass upon a claim of priority under this section since while the mechanic had actually retained possession he had proceeded to foreclose a lien under the provisions of the 1921 act concerning liens on chattels for labor and storage (Ill. Rev. Stat. 1971, ch. 82, par. 40), so that the issue had not actually been raised or

---

[2] Textual comment upon section 9—310 in Anderson's Uniform Commercial Code (1971) states: "such a lien is, basically, the artisan's lien of the common law. Whether such a lien is based upon decision or statute law, Code §9—310 gives it priority, with one exception, over a pre-existing security interest in the goods. * * *

The single exception relates to a lien created by statute; such a lien does not such priority if the statute expressly provides otherwise. Accordingly, the lien has priority when it is based upon the common law or decision, or when it is based upon a statute which is silent as to priorities, or which gives the lien priority. The lien is subordinated to the security interest only when the lien statute expressly so declares."

passed upon in the trial court. Such statutory lien with foreclosure is by its own terms made subordinate to the security interest shown upon the title to the vehicle. The issue here, however, is squarely framed upon the effect of the Code provision, and under the authorities we must hold that the claim of defendant for services and material supplied in the regular course of business supported by continuous possession takes priority over the security interest of the plaintiff bank.

In *Westlake Finance Co. v. Montgomery*, 64 Ill. App. 2d 347, 213 N.E.2d 34, it was held that the provisions of section 3—202 of the Illinois Vehicle Code (Ill. Rev. Stat. 1971, ch. 95½, par. 3—202) pertained only to the manner of perfecting a security interest upon the title for a motor vehicle by endorsing such interest upon that title, that such section does not determine priorities amongst security interests but that priorities were determined under section 9—310 of the Uniform Commercial Code.

Our examination of the structure and purport of the statute at issue raises legal implications that are not convincingly rational as to those chattels for which there must be a certificate of title[3] upon which title a security interest may be perfected.[4] As pointed out in *City Finance Co. v. Perry* (1953), 195 Tenn. 81, 257 S.W.2d 1, 36 A.L.R.2d 224, the garage keeper is necessarily familiar with the requirements of title for a motor vehicle, and the fact that security interests are commonly outstanding for such vehicles. It is not unreasonable, and it is certainly more businesslike, that the one furnishing repairs ask for the production of the title where the customer is unknown, or that other inquiry be made if the title certificate cannot be produced.

By reason of the functioning of section 9—310 of the Uniform Commercial Code, there are now three ways in which a lien for services and materials may be claimed upon a vehicle for which there is a certificate of title in Illinois.

The "artisan's lien," or common law lien takes priority over a perfected security interest where possession is retained yet there is no provision for its foreclosure or for the sale of the chattel. Assuming that the supplier seeks sale in execution of judgment, there is a question of whether the chattel again becomes subject to the secured interest shown on the title. (See *Town House Motel, Inc. v. Ward*, 2 Ill. App. 3d 699, 276 N.E.2d 809.) It appears that the state of title of a possible purchaser vis-a-vis the security interest shown on the title is unresolved.

The lien established by sections 1 and 4 of the 1921 chattel lien act (Ill. Rev. Stat. 1971, ch. 82, pars. 40, 43) provides that the supplier of services may relinquish possession, record his lien and satisfy such through foreclosure. Such lien is expressly subject to a security interest shown on

---

[3] Ill. Rev. Stat. 1971, ch. 95½, par. 3—101 *et seq.*
[4] Ill. Rev. Stat. 1971, ch. 95½, par. 3—202.

the certificate of title, and section 9—310 of the Uniform Commercial Code does not give it priority.

The lien provided by the 1941 act concerning liens of $200 or less for labor or storage for chattels (Ill. Rev. Stat. 1971, ch. 82, pars. 47a-47f), sometimes called the "Illinois Mechanic's Small Lien Act" (*Leavitt* v. *Charles R. Hearn, Inc.*, 19 Ill. App. 3d 980, 312 N.E.2d 806), permits notice and sale by the supplier for purposes of satisfying his lien. In its statutory terms, such lien is not made subordinate to the security interest perfected on a certificate of title, and by reason of section 9—310 of the Uniform Commercial Code it has priority over a secured interest. What title may be given by such sale and received by the purchaser is unresolved.

Under the provisions of section 9—310 of the Uniform Commercial Code, the judgment is affirmed.

Affirmed.

SIMKINS, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

The majority opinion holds that there is in Illinois a common law lien which automatically attaches to a repaired automobile for the cost of repairs. The common law lien is said to be superior to all other perfected security liens, is limited to the right to retain possession, and is a possessory interest sufficient to defeat the so-called replevin action.

The majority decision states that the common law lien has been consistently recognized by the courts of this State, and in support of that statement cites an 1860 Illinois Supreme Court decision, a 1916 appellate court decision, and a 1914 abstract appellate decision.

It seems to me that the substantive effect of the majority opinion is one of keeping the barnacles and throwing away the boat. The obvious legislative intent, indicated by an examination of the statutory provisions referred to in the majority opinion, is to establish a statutory scheme for liens under the Commercial Code and to eliminate, although not expressly stated, any so-called common law lien. The result of the majority opinion is to hold that one who has done repairs on an automobile and does nothing to protect any lien or security interest except retain possession is in a superior position to one who complies with the statutory conditions for perfecting a lien. The common law lien gives a lienholder the right only to possession and nothing more. The majority opinion does not discuss, but necessarily stamps with approval, a lien that arises without reference to any notice requirement, substantive or procedural due process requirement. In *Barry Properties, Inc. v. Fick*

*Bros. Roofing Co.* (Md. 1976), 353 A.2d 222, the court of appeals of Maryland in discussing creditor remedies and due process requirements as announced in *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 23 L. Ed. 2d 349, 89 S. Ct. 1820, *Fuentes v. Shevin*, 407 U.S. 67, 32 L. Ed. 2d 556, 92 S. Ct. 1983, *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 40 L. Ed. 2d 406, 94 S. Ct. 1895, and *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 42 L. Ed. 2d 751, 95 S. Ct. 719, observed:

"What we glean from *Sniadach, Fuentes, Mitchell* and *North Georgia Finishing* is that, lacking extraordinary circumstances, statutory prejudgment creditor remedies which even temporarily deprive a debtor of a significant property interest without notice and an opportunity for a prior probable-cause-type hearing are, as held in *Fuentes*, unconstitutional under the Fourteenth Amendment's due process clause unless safeguards such as those mentioned in *Mitchell* and *North Georgia Finishing* are present and even then, although this is less clear, the law may be invalid if the issues underlying the seizure are not susceptible to uncomplicated documentary proof or if the creditor does not have a present interest in the property seized." (353 A.2d 222, 231.)

I agree with such observation and since deprivation of possession is obviously a significant property interest, the so-called common law lien cannot pass constitutional muster.