(Nos. 23963, 23965.—

THE PEOPLE *ex rel.* Rheuna B. Pfeiffer *et al.* Appellees, *vs.* EUGENE T. MORRIS *et al.* Appellants.—THE PEOPLE *ex rel.* Rheuna B. Pfeiffer *et al.* Appellees, *vs.* MIKE VESPA *et al.* Appellants.

*Opinion filed February 18, 1937.*

SCOTT & SCOTT, S. S. DuHAMEL and ROSCOE C. BON-
JEAN, for appellants.

ALFRED H. GREENING, State's Attorney, and BARBER &
BARBER, (CLAYTON J. BARBER, and ALTON G. HALL, of
counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is a consolidation of two appeals to review two
judgments of ouster in *quo warranto,* entered by the cir-
cuit court of Sangamon county against members of the
Board of Education of High School District No. 142 and
of No. 92, in that county. The cases arise over much in-
volved attempts to organize three high school districts over
portions of the same territory. The purported districts in-
volved in these two *quo warranto* proceedings are district
No. 196, known in this record as the Dawson district, resi-
dents of which territory are the relators in these proceed-
ings; district No. 142, attacked in one of these *quo war-
ranto* proceedings, and known in the record as the Riverton
district, which lies over the westerly portion of the Dawson
district and to the west thereof; and district No. 92, at-
tacked in the other *quo warranto* proceeding, and known in
the record as the Buffalo district, which lies over the easterly
portion of the Dawson district, and to the east thereof.
Both informations were filed on the same day, were tried
together and the appeals are consolidated here.

The facts on which the confusion of these districts arises are, with the exception of one issue of fact hereinafter referred to, undisputed. The Riverton district overlaps the west three miles of the Dawson district, its east boundary extending north and south through the center of the village of Dawson. The Buffalo district overlaps the east one mile of the Dawson district. The records of the county superintendent of schools show that a petition for the organization of the Dawson district was filed on May 31, 1934; a like petition of the Riverton district was filed on June 7, 1934, and that of the Buffalo district on July 23, 1934. Elections were called on all these petitions. In all these a majority of the votes cast favored the proposition. Boards of education were elected in all three districts and if these petitions were all proper petitions we have a situation where two community high school districts are imposed on all of the Dawson district but seven sections thereof.

These petitions were filed under section 89a of the School law. (State Bar Stat. 1935, chap. 122, par. 97, p. 2847.) The provisions of that section are as follows: "Upon the receipt of a petition signed by fifty or more legal voters residing in any contiguous and compact territory, whether in the same or different townships, described in the petition, the county superintendent of schools of the county in which the territory or the greater part thereof is situated, shall order an election to be held for the purpose of voting for or against the proposition to establish a community high school, by posting notices for at least ten days in ten of the most public places throughout the said territory, which notices may be substantially in the following form, to-wit," etc.

Counsel for both appellant districts argue that the Dawson petition was not the first filed, but they say that on May 28 a petition for organization of the Riverton district was first received by the county superintendent of schools; that at his request it was taken away to see

whether it might not be changed to exclude the village of Dawson, since the east boundary line of the Riverton district went through the center of that village, and that it was brought back on June 7 without change therein. A dispute arises as to whether, under the language of section 89a, the Riverton petition is to be considered as filed or received on May 28 or on June 7. If on the former date, it was filed before the Dawson petition. The records of the office of the county superintendent of schools show, regarding the Riverton petition, "Filed in my office this 7th day of June, 1934." As to the Dawson petition his records show, "Filed 8 A. M. Thursday, May 31, 1934." Both file marks were signed by J. Ed Taylor, county superintendent of schools. Appellants say that the parol evidence offered shows that the county superintendent of schools in fact received the Riverton petition on May 28.

It is a well settled rule that where officials are required to keep a record of the proceedings of their office, such constitutes the only lawful evidence of action taken and cannot be contradicted, added to or supplemented by parol. (*People* v. *Hartquist,* 311 Ill. 127; *People* v. *Carr,* 231 id. 502; *Chaplin* v. *Highway Comrs.* 129 id. 651; *People* v. *Board of Supervisors,* 125 id. 334.) In the *Hartquist case* this court held that while there is no express requirement that the county superintendent of schools keep records, such requirement is necessarily implied from the nature and effect of the acts required of him. This was also held in *McKeown* v. *Moore,* 303 Ill. 448. The language of section 89a, "upon the receipt of a petition," must be construed to mean receipt for filing as shown by the records of the office. Unless received and filed so as to become a part of the records of his office, the county superintendent of schools does not receive such a petition. The file mark is a part of the record of the office for the purpose of showing the date of filing. Parol evidence is not admissible to show, as to date of receipt, as contemplated in the statute, that the

county superintendent of schools had such a petition in his hands at another date. Under these rules the first petition filed here was that of the appellee, the Dawson district.

But, say appellants, at the time the Dawson petition was filed there was involved in the circuit court of Sangamon county a former Riverton petition, including territory of the present Dawson district, by which petition another district was attempted to be formed, and the records of which proceedings were in the circuit court on *certiorari*, to quash such record, and that under section 89*b* of the School law the county superintendent of schools could not properly receive the Dawson petition. The provision of section 89*b* is as follows: "No territory involved in any petition, election or proceeding to organize a community high school district and not organized as or included within a community high school district shall be again involved in any petition, election or proceeding to organize a community high school district for a period of at least one year from the date this act takes effect and not oftener than once every two years after the expiration of such one year period." State Bar Stat. 1935, chap. 122, par. 97-(1).

The record pertaining to that petition is as follows: On April 16, 1934, a petition was filed seeking the organization of a community high school district in territory comprising parts of all three of the districts involved here. An election was held on April 28, 1934, resulting in the defeat of the proposition. On May 25, 1935, a petition for *certiorari* was filed in the circuit court seeking to have the petition of April 16 and the election thereon on April 28 held void and the record thereof quashed. There was a hearing on this *certiorari* and the cause was continued and not disposed of until September 10, when the record of the petition and the election was quashed. Appellants say that as the first Riverton petition included certain of the Dawson territory, the county superintendent of schools had no authority to receive the Dawson petition. Appellees say

that the record having been quashed on *certiorari,* it is as though there never had been a petition involving the Dawson district.

The effect of the judgment in the *certiorari* proceeding quashing the record of the petition and election was to render those proceedings a nullity from the beginning, and they were as though they had never been. In *Sholty* v. *Dale Township,* 63 Ill. 209, this court considered a statute regarding the laying out of highways, which provided that after a final decision on the matter of laying out a highway no application should be received for such purpose over the same road within one year from the date of the final determination. The record there made pertaining to the opening of a road was quashed by a judgment of the circuit court and within a year another petition was filed for the opening of the road. It was held that the legislature did not intend the prohibition of new proceedings to apply to a case in which the record has been set aside on a common law writ of *certiorari,* this court there saying: "As soon as this was done the proceeding became a nullity from the beginning." To the same effect is *Baer's Express Co.* v. *Industrial Board,* 282 Ill. 44. The Riverton petition of April 16, and the election thereafter held thereon, being void from the beginning, the county superintendent of schools was not prohibited from receiving and acting upon the Dawson petition filed May 31, 1934.

The Dawson petition being valid and first filed, we come then to the question whether the county superintendent of schools had authority to proceed with the elections in the Riverton territory when that petition was filed on June 7, or the Buffalo territory when its petition was filed on July 23, both proposed districts including territory described in the Dawson petition. In *People* v. *Drennan,* 307 Ill. 482, it was held that it is the duty of the county superintendent of schools to call an election when a proper petition is filed, signed by a sufficient number of legal voters

of the district.. As we construe section 89b, territory included in a petition on file in the county superintendent's office may not be included in another petition to organize such territory as a part of another community high school district, as such territory is "involved" in the first petition. This being true, a petition including territory involved in another petition on file in the county superintendent of schools' office cannot be considered a proper petition. It seems to be conceded in the pleadings, which are somewhat involved, that where districts overlap, the petition first received by the county superintendent has priority. It seems clear to us that the legislature intended by section 89b not only that the first petition filed with the county superintendent of schools in cases of overlapping territory have priority, but that by reason of the prohibition against including territory involved in another petition, the first filed is the only petition he has any right to act upon. In *People* v. *Drennan, supra,* it was said that in the case of overlapping districts it is the duty of the county superintendent of schools to call an election in each district when proper petitions are filed. The decision of the *Drennan case* was correct, as an attempted organization of another district known as the Chatham district was held invalid. The holding that it is not optional with the county superintendent to call an election when the proper petition is filed, is correct, but the general statement that in overlapping districts he is required to call elections on both petitions was not necessary to the decision of that case and was too broad, and while the result was correct, that language is not applicable here. Obviously it could not have been the intention of the legislature to give free-for-all voting on as many petitions as may have the required number of signers regardless of overlapping territory. Such a rule would permit the organization of more than one community high school district over the same territory. Such has in fact been the result in the cases before us. Under section 89b,

as we construe it, a proper petition is one which does not include within the bounds of the proposed district, territory included in another petition already on file with the county superintendent of schools. That the legislature could not have intended otherwise is clearly shown by the confusion that has arisen in these cases. All this confusion could have been avoided by a proper understanding of the statute.

Appellants also raise the question of *laches*. Appellants of the Buffalo district say that they have elected their officers, organized their district and incurred obligations amounting to $3000 under a contract to pay the common school district of Buffalo for affording high school privileges to students of the community high school district. Appellants, of the Riverton district, make the same complaint and say that they have become obligated to the extent of $2000 for the same purpose. Though all of these three districts completed their organization, none has levied any taxes or constructed or contracted for any buildings. We are of the opinion that this is not a case where *laches* could be held to run against the people. Mere lapse of time does not estop the people. (*People* v. *Hartquist, supra; People* v. *Buesinger,* 324 Ill. 534.) In *People* v. *Keene,* 322 Ill. 255, cited by the appellants, a school had been actually conducted for five years and it was held that there was there a showing of great inconvenience and injustice. In *People* v. *Keigwin,* 256 Ill. 264, an election was held and a site purchased, teachers employed, supplies purchased and relators' children attended school. The rule was there declared to be: "If the public itself through its officers by long acquiescence has permitted a condition to arise such that great injury and injustice will result from the allowance of the writ, these things may be taken into consideration by the court in determining whether to allow the writ. No such case is made by the pleas." We are of the opinion that the situation here does not justify the holding that appellees are estopped.

Other questions are raised and argued in the briefs but under the views hereinbefore expressed it is not necessary to consider them further.

The judgments of the circuit court ousting the Buffalo district board and the Riverton district board were right and are affirmed.

*Judgments affirmed.*