BROMBEREK SCHOOL DISTRICT NO. 65, Plaintiff-Appellant, v. TED SANDERS, State Superintendent of Education, *et al.*, Defendants-Appellees.

First District (3rd Division) No. 87—3448

Opinion filed August 24, 1988.—Rehearing denied October 3, 1988.

Stuart D. Gordon, of Moss & Bloomberg, Ltd., of Bolingbrook, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Rita M. Novak, Assistant Attorney General, of Chicago, of counsel), for appellee Ted Sanders.

James P. Bartley, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellee Lemont Community Consolidated School District No. 113.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff-appellant, Bromberek School District No. 65, appeals from the circuit court's affirmance of the administrative decision of defendant Ted Sanders, the State Superintendent of Education (Sanders), approving a petition to consolidate two elementary school districts. On appeal plaintiff contends that: (1) Sanders lacked jurisdiction to consider the petition to combine school districts; (2) Sanders' decision was contrary to the manifest weight of the evidence; (3)

Sanders' decision was erroneous as a matter of law; (4) the petition to combine school districts failed to comply with statutory requirements; (5) the initial hearings on the petition before the regional superintendent of education for Cook County were conducted in violation of the Open Meetings Act (Ill. Rev. Stat. 1985, ch. 102, par. 42); and (6) the regional superintendent of education had a personal interest in the outcome of the hearings and should have recused himself from conducting the hearings.

For the reasons stated below, we affirm the judgment of the trial court which affirmed the administrative decision granting the petition to consolidate.

The record indicates that 158 of the 827 registered voters of Bromberek District 65 signed a petition pursuant to article 11B of the School Code (Ill. Rev. Stat. 1985, ch. 122, par. 11B—1 *et seq.*) to combine its school district with Lemont District 113. Lemont District 113 is located in southwestern Cook County and comprises 25 square miles. Bromberek District 65 is located in Du Page County just north of the Cook County-Du Page County line and comprises approximately six square miles. The two districts are contiguous. Both District 113 and District 65 are located within the boundaries of Lemont Township High School District Number 210.

A hearing on Bromberek's petition was held before Richard Martwick, the regional superintendent of education for Cook County (Martwick), in early 1986. Martwick recommended the consolidation. Defendant Sanders issued an administrative decision approving the consolidation.

At the start of the hearing before Martwick, Bromberek District 65 requested that Martwick recuse himself as the hearing officer. Bromberek asserted that the claimed benefits of consolidation all would accrue to the Cook County portion of the territory involved, and since Martwick is an elected Cook County official, the affected residents of Du Page County would have no recourse at the ballot box regarding the decision on the consolidation petition. Martwick denied the motion for recusal. The Bromberek district then filed a motion to dismiss the petition, alleging the petition was defective in that: (1) article 11B had been repealed by implication and the proposed consolidation must be considered in accord with the 1985 School District Reorganization Act (the Reorganization Act) (Ill. Rev. Stat. 1987, ch. 122, par. 1502—1 *et seq.*); (2) the hearing on the petition violated the Open Meetings Act (Ill. Rev. Stat. 1985, ch. 102, par. 42) since it was conducted on a legal holiday; and (3) the petition failed to reflect the maximum tax rates to be levied by the proposed consolidated district,

as required by the Reorganization Act (Ill. Rev. Stat. 1985, ch. 122, par. 11B—3). Martwick denied the motion to dismiss.

The parties then presented the following evidence at the hearing. Both District 65 and District 113 provide courses for kindergarten through eighth grade. District 65 has one school building, while District 113 has two, one for kindergarten through fourth grade and another for fifth through eighth grade. District 65 has a student enrollment of 104 and employs seven full-time teachers, one part-time teacher, and one administrator who serves as both superintendent and principal. The number of students per classroom ranges from 8 to 16. District 113 has a student enrollment of 919 and employs 32 regular classroom teachers, some special education teachers, and three administrators, including a superintendent and a principal for each of the two school houses. The number of students per classroom ranges from 21 to 30. All of the students attending the elementary schools in District 113 and District 65 go on to public high school in Lemont District 210.

Both districts provide educational programs which comply with State requirements. District 113 presented evidence to indicate that it provides the following programs and staff not offered by District 65: a gifted student program in math and language arts; Title I reading and math for all grades year-round; full-time teachers in speech, psychology, and special education; a full-time nurse; and a hot lunch program.

District 113 has an equalized assessed valuation of $81,229 per student, or a total of approximately $74,649,816. District 65 has an equalized assessed valuation of $159,276 per student, or a total of approximately $16,564,663.

C. Thomas Reiter, superintendent of District 113, testified that if the consolidation were effected, Bromberek students in kindergarten though third grade, in addition to seventh, eighth and possibly sixth grade, would be bused to the schools in Lemont. Lemont students in fourth, fifth, and possibly sixth grade would be bused to the Bromberek school. Reiter and Thomas Linhardt, one of the two principals in District 113, testified that they favor the consolidation. Thomas Meade, the superintendent and principal of District 65, testified that the consolidation is not in the educational interest of the children.

Plaintiff called two educational experts to testify. William Hazard, J.D., Ph.D., a professor of education administration at Northwestern University and an author in the field of education, testified that a consolidation would not be in the educational interests of the children in the Bromberek district. Hazard stated that the smaller Bromberek

classes provided better educational results than the larger classes in the Lemont district; allowed for increased student participation in class discussions and leadership roles; and facilitated advanced studies for gifted students. Any class size decrease for Lemont district students as a result of the consolidation would not be beneficial since the decrease would be so small as to be statistically insignificant. Generally, a consolidation should be approved only if it will result in an educational benefit, and not merely so that one district is able to utilize available space in another school's building, or so that elective courses can be offered.

Dr. Paul Schilling, an educational consultant who previously served as a teacher, principal, and superintendent of schools, testified that the consolidation would not be beneficial since District 65 and District 113 have different "spending philosophies." As of June 30, 1985, District 113 was insolvent in its educational fund, while District 65 was solvent. District 113 had reserves of 4% of its 1985 fiscal year expenditures, while District 65 had operating reserves of 57% of its 1985 fiscal year expenditures.

A number of other witnesses testified, including residents from District 65 and District 113. Plaintiff called 17 residents of District 65 who testified against the consolidation and stated that they and their children did not participate very much in District 113 community activities. Defendants called three District 65 residents who stated that their children participate in athletic and church activities in District 113. Defendants also presented witnesses with education and experience in elementary education, who testified that the proposed combination was in the best interest of the schools of the area and to the educational benefit of the students. Those witnesses included a former superintendent of schools for school District Number 66, which borders District 65 to the north; the principal of the District 113 school; a substitute teacher for District 113 and District 65, who resides in District 113 and whose children attend school in high school District 210; and a District 113 teacher who resides in District 113 and who formerly taught in District 65.

Plaintiff initially contends on appeal that defendant Sanders lacked jurisdiction to consider article 11B petitions as a result of the enactment of the 1985 School District Reorganization Act (Ill. Rev. Stat. 1987, ch. 122, par. 1502—1 et seq.), which, plaintiff asserts, repealed by implication article 11B (Ill. Rev. Stat. 1983, ch. 122, par. 11B—1 et seq.). Plaintiff asserts that pursuant to article 11B, a majority of the total number of votes in the territory involved in a proposed consolidation was needed for the approval of a petition to consolidate.

Under the Reorganization Act, a petition to combine wins approval upon a favorable vote by a majority of voters in *each* district affected by the proposed consolidation. Further, the Reorganization Act provides for a comprehensive examination of *all* school districts within the State, utilizing one set of review criteria. Plaintiff contends that article 11B provided for piecemeal examination of petitions to consolidate.

A repeal by implication is not favored in the law, and a statute will not be held to be repealed by implication by a subsequent enactment if a repeal can be avoided on any reasonable hypothesis. (*Caruthers v. Fisk University* (1946), 394 Ill. 151, 68 N.E.2d 296; *Spaulding School District No. 58 v. Waukegan City School District No. 61* (1960), 18 Ill. 2d 351, 356, 164 N.E.2d 63.) Unless the two statutes cannot be reconciled or there is such inconsistency that the two acts cannot stand, a repeal will not be found. (*Caruthers,* 394 Ill. at 162.) In *Town House Motel, Inc. v. Ward* (1971), 2 Ill. App. 3d 699, 276 N.E.2d 809, the court stated:

> "Where two statutes are enacted which have relation to the same subject, the earliest [*sic*] continues in force unless the two are clearly inconsistent with and repugnant to each other or unless in the latest [*sic*] statute some express notice is taken of the former plainly indicating an intention to repeal it, and where two acts are seemingly repugnant, they should, if possible, be so construed that the later [*sic*] may not operate as a repeal of the former by implication. It is not enough to justify the inference of repeal that the subsequent statute covers some, or even all, of the questions covered by the former. There must be an irreconcilable repugnancy." (*Town House Motel, Inc.,* 2 Ill. App. 3d at 704.)

Further, in determining the meaning of the acts, we look to the language and the purpose of the statutes. See *Niven v. Siqueira* (1985), 109 Ill. 2d 357, 487 N.E.2d 937.

We find that the Reorganization Act does not repeal article 11B of the School Code expressly or by implication. We find no irreconcilable repugnancy between the statutes and find that both statutes can stand. The Reorganization Act provides for the reorganization of school districts "through the retention of certain districts and the combination or reorganization of other districts." (Ill. Rev. Stat. 1987, ch. 122, par. 1502—1.) The Act calls for the formation of committees throughout the State (Ill. Rev. Stat. 1987, ch. 122, par. 1502—3(a)) to form and submit plans for reorganization, as needed, of school districts according to regions (Ill. Rev. Stat. 1987, ch. 122, par. 1502—4).

Upon certification of the plan by the State committee, the plan is submitted to the voters of the territory affected. (Ill. Rev. Stat. 1987, ch. 122, par. 1502—7.) Upon approval by a majority of voters in each of the districts affected, each plan becomes effective on July 1, 1988. Ill. Rev. Stat. 1987, ch. 122, par. 1502—7.

The Reorganization Act went into effect on August 1, 1985, and required the committees to be set up within 60 days of the effective date of the Act. (Ill. Rev. Stat. 1985, ch. 122, par. 1502—3(a).) Further, the Act required that the reorganization plans be submitted to the State committee by September 30, 1986. (Ill. Rev. Stat. 1987, ch. 122, par. 1502—4.) The Reorganization Act thus provides for the comprehensive review and reorganization, where necessary, of school districts within a limited period of time and according to a certain specified procedure not found in article 11B. See Ill. Rev. Stat. 1987, ch. 122, par. 1502—4.

Article 11B, of the other hand, is not so limited in duration and scope. Rather, article 11B provides for the filing of a petition to combine by the boards of each district affected or by 10% of the voters of each district affected. Article 11B sets forth requirements for the filing of the petition, the giving of notice for a hearing on the petition, and the criteria for reviewing the merits of the petition. However, unlike the Reorganization Act, article 11B does not, for instance, set forth specific deadline dates for the filing of the petitions or submission of plans for reorganization within a certain time period after the Act becomes effective.

■ Further, in an amendment of section 4 of the Reorganization Act, effective March 20, 1986, the legislature references article 11B and thereby indicates the continuing validity of article 11B. The amendment requires that the committee in each region set forth maximum tax rates of the proposed new district, which rates are to be enforced in accord with "each of the purposes set forth in Section 11A—3 or 11B—3 of The School Code, as now or hereafter amended." (Ill. Rev. Stat., 1986 Supp., ch. 122, par. 1502—4.) We find that article 11B of the School Code sets forth procedures for organization in addition to or alternatively to those set forth in the limited provisions of the Reorganization Act. Since the petition in the instant case was filed pursuant to article 11B, those statutory provisions control.

Plaintiff next contends that assuming *arguendo* that defendant Sanders had the authority to consider an article 11B consolidation petition, Sanders' decision approving the consolidation of District 65 and District 113 was contrary to the manifest weight of the evidence. Plaintiff contends that the evidence presented by defendants in favor

of consolidation was impeached and was insufficient to justify granting the petition. The evidence favoring the consolidation indicated: (1) the proposed district would be financially available to offer courses not currently offered in District 113, including home economics, industrial arts, and foreign languages; (2) District 65 students will have the opportunity to participate in more interscholastic sports; (3) District 65 students will be in classes double the size of their current classes; (4) tax revenues will become equalized; and (5) District 65 and District 113 share a community of interests.

Plaintiff contends that evidence was presented to rebut each of the five "advantages" of the proposed consolidation. First, both districts offer similar required courses, art and music courses, intramural sports, and gifted student programs. Plaintiff's expert, Paul Schilling, stated that foreign language electives are not appropriate for junior high school students. Even the former school superintendent called by defendants testified that the offering of elective courses does not justify a consolidation. Further, Schilling stated that competition through intramural sports is more beneficial to students at the junior high school level than interscholastic sports, which were emphasized in District 113. Plaintiff's witnesses testified that studies and personal experience showed that smaller class size promoted increased personal attention to students, an improved learning atmosphere, and better educational results than larger class sizes.

Plaintiff admits that a consolidation would result in an "equalization" of tax revenues. Plaintiff asserts that such an equalization, however, would be detrimental to District 65, since it will require revenue from property owners in District 65 to pay for the education of students in District 113. Further, plaintiff rebuts the existence of a shared "community of interest" between the two districts. Plaintiff asserts that the only evidence regarding the community of interest is that some District 113 residents and a small number of District 65 children participate in little league or soccer in Lemont, and that several Bromberek children use the pool in Lemont.

In addition to attempting to rebut the so-called advantages of the consolidation, plaintiff asserts that the following evidence indicates the detrimental effects of the proposed consolidation, which outweigh the evidence showing any positive effects of the consolidation. First, plaintiff's witnesses testified that smaller class sizes are more beneficial to learning than larger class sizes. Second, without the consolidation, all students in both districts have the opportunity to attend schools in their own communities. Third, a consolidation would result in tax disparities. For instance, Schilling testified that a District 65

homeowner would pay approximately 15.7% more in taxes than a similarly situated homeowner in District 113, and a commercial property owner in District 113 would pay 121% more in taxes than a commercial property owner in Du Page County. Further, one of plaintiff's experts testified that a "post-reorganization scarring and trauma" might occur, resulting in resentment and less willingness among residents to fund future improvements in education. Plaintiff asserts that the District 65 residents likely would consider themselves disenfranchised, since District 113 voters would far outnumber them at the ballot box on a vote regarding the consolidation.

Additionally, plaintiff's experts testified that a consolidation would not result in financial savings. The salaries of District 65 teachers would be increased to meet the salaries of District 113 teachers. Further, plaintiff's witnesses stated that a consolidation should not be approved so that elective courses can be offered or so that one district may utilized the space of another district. Finally, Schilling testified that the two districts have different spending philosophies, and the District 113 was insolvent in its educational fund as of June 30, 1985, while District 65 was solvent.

■■ ■ The findings and decisions of the regional superintendent will not be set aside on administrative review unless they are shown to be contrary to the manifest weight of the evidence. (*Board of Education v. Regional Board of School Trustees* (1982), 89 Ill. 2d 392, 433 N.E.2d 240.) It is not the role of the court to reweigh the evidence, but rather to determine whether the decision is supported by the evidence. (*Regional Board of School Trustees*, 89 Ill. 2d at 396-97.) If the court determines that the board has considered the applicable statutory standards and its decision is supported by substantial evidence, then the court must affirm the board's decision. *Regional Board of School Trustees,* 89 Ill. 2d at 396-97, citing *School Directors of School District No. 82 v. Wolever* (1962), 26 Ill. 2d 264, 268, 186 N.E.2d 281.

■■ Article 11B, the applicable statute in the instant case, provides that in determining whether to grant or deny a petition, the regional superintendent should consider the following factors: (1) whether the proposed district will have sufficient size (pupil enrollment) and financial resources (assessed valuation); (2) whether the proposed school district is for the best interests of schools of the area and the educational welfare of the pupils therein; and (3) whether the territory for the proposed school district is compact and contiguous. Ill. Rev. Stat. 1985, ch. 122, par. 11B—3.

■■ Defendant Sanders, the State Superintendent, found that all three factors were met. Further, Sanders found that the evidence "es-

tablishes the possibility of improved educational facility utilization, enhancement of junior high curriculum, utilization and school nurse and psychologist services, and enhancement of the music and band programs for all District No. 65 and District No. 113 pupils." The evidence presented by defendants supports the findings of Sanders. For instance, District 113 has problems of limited space in their schools, while District 65 has underutilized space. The consolidation would provide for the enhanced utilization of available space. Further, the consolidation would result in a more equitable distribution of the equalized assessed valuation of all students in the territory. The consolidation also would allow for increased opportunities for District 65 children to participate in extracurricular activities and to reap the benefits of the full-time psychologist, school nurse, and gifted student programs offered by District 113.

Both District 65 and District 113 are within the boundaries of high school District 210, and the students from both districts go on to the District 210 high school. A consolidation would allow students the opportunity during elementary school to meet and interact with the children with whom they would be attending high school. Further, District 65 children were already being bused to the Bromberek school. Defendants presented evidence to indicate that any increase in the time and distance under the busing program for the proposed consolidation would be minimal and would present no foreseeable problems for the students. While plaintiff presented some evidence in opposition to the consolidation, we find that the decision to grant the petition is supported by the manifest weight of the evidence.

■ Plaintiff next contends that the decision to grant the petition was erroneous as a matter of law, since Sanders failed to determine whether the consolidation would enable students to attend schools in their natural communities and failed to make specific findings regarding factors set forth in the Reorganization Act (Ill. Rev. Stat. 1987, ch. 122, par. 1502—1 *et seq.*). Since we have found that the Reorganization Act failed to repeal article 11B (Ill. Rev. Stat. 1985, ch. 122, par. 11B—1 *et seq.*), the controlling statute in this case, we need not consider plaintiff's argument regarding factors under the Reorganization Act. In any event, we find that the evidence fails to indicate that the proposed consolidation would result in the children attending schools outside their natural communities.

■ Plaintiff next contends that the hearings conducted by regional superintendent Martwick were void since the petition to consolidate failed to set forth "the maximum tax rates for educational and operations, building and maintenance purposes the proposed district

shall be authorized to levy," as required by article 11B (Ill. Rev. Stat. 1985, ch. 122, par. 11B—3). The petition in the instant case sets forth percentages of the proposed tax rates. Plaintiff contends that in order to constitute a "rate," the percentage must be applied to a given number which represents the equalized assessed valuation of the property.

We find that the petition sufficiently sets forth the required information regarding the tax rates for the proposed school district. Defendant, District 113, notes that the statute fails to require that the stated tax rates be upon all the taxable property of the district, as equalized. (Ill. Rev. Stat. 1985, ch. 122, par. 11B—3.) Further, District 113 states that the percentage rate is always applied to the equalized assessed valuation and that the statute fails to provide any other factor to which the rate is ever applied. We find that since the petition provides the equalized assessed valuation for the property involved, in addition to the tax rate percentages for the proposed district, the statutory requirement has been met.

 Plaintiff also contends that the hearings before regional superintendent Martwick were invalid, as they constituted a meeting of a public body and were conducted in violation of the Open Meetings Act (Ill. Rev. Stat. 1985, ch. 102, pars. 41.02, 42). The hearings began on February 17, 1986. Plaintiff asserts that since that day was a legal holiday, the hearing violated the Act. The Act again was violated, plaintiff asserts, when the only notice regarding the dates of the continuing hearings was given on that first day of the hearings.

The Open Meetings Act sets forth the public policy that the public agencies of the State "exist to aid in the conduct of the people's business. It is the intent of this Act that their actions be taken openly and that their deliberations be conducted openly." (Ill. Rev. Stat. 1985, ch. 102, par. 41.) That is, all official meetings of public bodies must be public. (*Goldman v. Zimmer* (1965), 64 Ill. App. 2d 277, 281, 212 N.E.2d 132, *rev'd on other grounds* (1966), 35 Ill. 2d 450, 220 N.E.2d 466.) Section 2.01 of the Act (Ill. Rev. Stat. 1985, ch. 102, par. 42.01) provides that "[n]o meeting required by this Act to be public shall be held on a legal holiday unless the regular meeting day falls on that holiday." However, section 3 of the Act (Ill. Rev. Stat. 1985, ch. 102, par. 43(a)) provides that where there is noncompliance with the Act, any person may bring a civil action in circuit court "prior to or within 45 days after the meeting alleged to be in violation of this Act."

 In the instant case, plaintiff failed to complain of the alleged violation within the 45-day time period provided for in the Act and therefore has waived the issue. Even assuming that plaintiff pre-

served the issue for review, plaintiff fails to indicate that notice of the initial meeting was defective, or that any interested persons were unaware of the initial meeting or the subsequent meetings. Plaintiff fails to allege any prejudice resulting from the first session of the hearings being held on February 17, 1986. Further, plaintiff fails to indicate that the purpose of the Act was violated.

The statute provides for remedies for violations of the Act, including a *mandamus* requiring a meeting be open to the public; an injunction against future violations; an order to make available to the public the minutes of the meeting; or a declaration that the final action taken at a closed meeting in violation of the Act is null and void. (Ill. Rev. Stat. 1985, ch. 102, par. 43(c).) In determining an appropriate remedy, the court is to consider the "orderly administration and the public interest, as well as *** the interests of the parties." (Ill. Rev. Stat. 1985, ch. 102, par. 43(c).) In the instant case, plaintiff has failed to assert specifically in what manner the meeting was repugnant to orderly administration, the public interest, or the interests of the parties. Since plaintiff failed to assert the violation within the period provided for in the statute and fails on appeal to indicate with any specificity the detrimental effects of conducting the first day of the hearing on February 17, 1986, plaintiff's argument must fail.

■■■ Finally, plaintiff contends that regional superintendent Martwick had a personal interest in the outcome of the hearing and his failure to recuse himself from conducting the hearing constitutes error. Plaintiff asserts that the people who would receive the greatest benefit from a consolidation are Cook County taxpayers who would be able to utilize the Du Page County tax base. At the time of the hearings, Martwick was campaigning in Cook County for reelection as regional superintendent. Plaintiff asserts that Martwick "had nothing to fear from" Du Page County residents who opposed the consolidation. In its reply brief, plaintiff contends that Martwick's candidacy for office in Cook County, the area which would be financially benefited by his ultimate decision, tainted the proceedings.

We disagree. We do not believe that the fact of Martwick's candidacy for reelection in itself is a sufficient ground for finding error. The statute mandates that the initial determinations regarding a petition to consolidate be made by the regional superintendent. (Ill. Rev. Stat. 1985, ch. 122, par. 11B—3.) We cannot assume that the legislature failed to consider or anticipate that the regional superintendent likely would be campaigning for reelection while holding his elected office, nor that campaigning for reelection implies bias on the part of

the person holding office. Further, our review of the record fails to reveal that Martwick was biased.

For the reasons stated below, we affirm the judgment of the circuit court.

Judgment affirmed.

McNAMARA and RIZZI, JJ., concur.