CHARLES W. HELMIG III *et al.*, Plaintiffs-Appellants, v. JOHN F. KENNEDY COMMUNITY CONSOLIDATED SCHOOL DISTRICT No. 129 *et al.*, Defendants-Appellees.—FRED L. CARUS *et al.*, Plaintiffs-Appellants, v. JOHN F. KENNEDY COMMUNITY CONSOLIDATED SCHOOL DISTRICT No. 129 *et al.*, Defendants-Appellees.

Third District Nos. 3—92—0808, 3—92—0809, 3—92—0881, 3—92—0882 cons.

Opinion filed March 10, 1993.

Charles W. Helmig III, of Peru, for appellants Charles W. Helmig III, Carolyn M. Helmig, Charles W. Helmig IV, Carrie M. Helmig, James M. Helmig, Mark J. Tondi, Pam Tondi, Ronnie J. Tondi, and Carol F. Tondi.

Douglas J. Schweickert & Associates, of Peru (Scott Ganassin, of counsel), for other appellants.

James Brusatte, Assistant State's Attorney, of Ottawa, and William R. Banich, of William R. Banich, P.C., of La Salle, for appellees William F. Novotney and Regional Board of School Trustees of La Salle County.

Everett E. Nicholas, Jr., of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago (Heidi A. Katz, of counsel), for appellee John F. Kennedy Community Consolidated School District No. 129.

Loewenstein, Hagen, Oehlert & Smith, P.C., of Springfield (Allen J. Oehlert, of counsel), for appellees Carolyn Schultz and Gail Sunken.

JUSTICE LYTTON delivered the opinion of the court:

The Board of Education of John F. Kennedy Community Consolidated School District No. 129 (JFK) and the Board of Education of Oglesby Elementary School District No. 125 (Oglesby) jointly petitioned the La Salle County Regional Board of School Trustees (regional board) to dissolve JFK and annex its territory to Oglesby. The regional board approved the petition. Two groups of objectors then filed separate cases as plaintiffs in the circuit court, seeking administrative review and reversal of the regional board's decision. The cases were consolidated, and the court affirmed the decision of the regional board. The plaintiffs then filed this appeal. We affirm.

On May 21, 1992, the JFK and Oglesby boards of education each voted unanimously to petition the regional board of school trustees to dissolve JFK and annex its territory to Oglesby. On June 17, 1992, the regional board held a hearing on the petition.

JFK superintendent and principal John Josephson testified in support of the petition. Josephson stated that the dissolution of JFK and annexation to Oglesby was in the best interest of the districts and the educational welfare of the students. JFK had a total of 37 enrolled students and four full-time teachers at the end of the 1991-92 school year. Each teacher was responsible for all instructional areas for her class, including art, music and physical education. One teacher was responsible for six students in preschool and kindergarten; one teacher

taught 11 students in the first and second grades; one teacher taught 12 students in the fourth and fifth grades; and one teacher taught nine students in the sixth and seventh grades. JFK had no students in the third or eighth grades.

Josephson testified that Oglesby's educational program was far superior to what JFK offered. JFK levied taxes at the maximum allowable rates and had issued successively larger tax anticipation warrants (TAWs). JFK's last TAW was in the maximum amount allowed by statute. Because of decreasing assessments and declining enrollment, JFK's financial condition was worsening and the district had been placed on the Illinois State Board of Education's financial watch list. In March of 1992, voters defeated a tax increase referendum by a margin of three to one. Thus, JFK was facing additional reductions in staff and support services.

Richard Verucchi, a member of the JFK board of education, testified about the district's worsening financial condition. He stated that the JFK board investigated possible annexation to neighboring districts and found that Oglesby was the best alternative. This conclusion was based in part upon geography, sports, social and church activities between residents in the two districts, and the sense that Oglesby welcomed JFK's students and had already developed a plan to integrate them into the Oglesby school system.

JFK board member Linda Mudge testified about the results of a survey conducted among JFK district residents. Out of 179 responses, 29 persons favored repeating the defeated referendum, 31 favored a referendum for a smaller increase, 100 favored dissolving the district and annexing to a neighboring district, 17 voted to delay consolidation for one year, and 2 voted to annex or consolidate without indicating a time preference. Of the 119 persons favoring annexation, 78 preferred Oglesby, 28 preferred Peru, 3 preferred Tonica, 2 had no preference, and 8 listed multiple choices including Oglesby.

Mudge testified that she believed Oglesby to be the best choice. She based this upon the expressed preferences of JFK residents, the attitude of Oglesby representatives, and Oglesby's small-school atmosphere which was similar to JFK. Students from both JFK and Oglesby attend La Salle Peru High School, and many JFK residents participate in sports activities and attend church in Oglesby.

JFK board president Lance Korter testified about the tentative plans for the JFK school property. JFK had entered into an intergovernmental agreement with the Village of Cedar Point. Under this agreement, Cedar Point would use the school building for municipal

offices and garage space. Thus, taxpayers would continue to derive a public benefit from the property.

Dr. James Boyle, superintendent of Oglesby, testified that if JFK were annexed into Oglesby, the latter's population would increase from 4,500 to 5,100, and the student enrollment would increase from 323 to 360. Like JFK, Oglesby is on the State Board of Education's financial watch list. However, Oglesby's finances would be markedly enhanced if JFK were annexed. State incentive payments to Oglesby accompanying the consolidation would total over one million additional dollars.

JFK and Oglesby had entered into a pre-annexation agreement. Under this agreement, one JFK teacher was assured employment in Oglesby, and other JFK teachers would be given priority consideration for future recalls and substitute teaching work. However, after the districts approved the agreement, Oglesby reexamined its needs and unilaterally offered all four JFK teachers employment if annexation occurred.

Boyle testified about Oglesby's transition services and programs. These included two informational meetings for JFK residents, special computer instruction for incoming seventh and eighth graders from JFK, and two places on the cheerleading squad which were being held open for JFK students. According to Boyle, granting the petition was clearly in the best interest of the two districts.

Robert Meehan, principal of Oglesby's two elementary schools, provided in-depth analysis of the district's curricular format. Features of Oglesby's programs not available in JFK included certain preschool and kindergarten options, special teachers for art, music and physical education, as well as social studies, math, science and computer education at the junior high level, meal programs, morning supervision for students dropped off early, computer education, in-district special education programs, a junior high gifted-student program, and a wider range of extracurricular activities. Oglesby also offers more readily available psychological, social work and speech services. According to Meehan, Oglesby could easily absorb JFK's students, and granting the petition would have no adverse effect upon the curricular and extracurricular opportunities that Oglesby offers.

Oglesby board president Christine Paul testified that the annexation of JFK to Oglesby was in the best interest of the students and the two districts. Paul stated that it was Oglesby's intention to hire all four JFK teachers if annexation occurred.

Several other persons testified in support of the petition. Susan Nelson, a second-grade teacher and president of the Oglesby Elemen-

tary Teachers Union, said that because of the educational opportunities available at Oglesby, granting the petition was in the best interest of the students. JFK teachers Carolyn Schultz and Gail Sunken supported the petition, provided their statutory rights were honored and their tenure and seniority were transferred to Oglesby.

Two groups of residents filed objections and spoke in opposition to the JFK-Oglesby petition. The first group of plaintiffs was the Carus family. Frederick Carus, a resident in the Peru Township portion of JFK, stated that he does not oppose dissolution. However, in his opinion, the JFK board did not give enough consideration to splitting up its territory between the Tonica, Oglesby and Peru districts. Cynthia Carus testified that her family orients toward Peru, and prefers to be a part of Peru's educational system.

The second group of plaintiffs consisted of members of the Helmig family who reside in the Peru township portion of JFK. Attorney Charles Helmig stated that members of his extended family would be better served by being in Peru rather than Oglesby. Helmig believed that the best interest of the JFK district would be served if the petition were denied and the matter forced back to JFK for the adoption of a rational plan.

At the conclusion of the hearing, the regional board took the matter under advisement. In an order dated July 6, 1992, the board granted the petition. On July 16, 1992, each group of plaintiffs filed petitions for rehearing, renewing its prior contentions. The plaintiffs also asserted that the regional board was precluded from hearing the JFK-Oglesby petition because a detachment petition involving a portion of JFK's territory had previously been filed by Thomas and Nancy Bruch, and the Bruch petition was still pending at the time the JFK-Oglesby petition was filed. On July 22, 1992, a hearing was held on the Carus and Helmig petitions for rehearing. On July 23, 1992, the regional board denied the petitions for rehearing.

The objectors then filed their complaints for administrative review in the circuit court of La Salle County, where the cases were consolidated. After the parties submitted briefs and presented oral arguments, the court affirmed the decision of the regional board. The plaintiffs then filed this appeal.

The first issue presented is whether the pendency of a prior petition precluded consideration of the instant petition. The plaintiffs assert that the regional board could not consider the JFK-Oglesby petition until it considered and disposed of a petition filed by the Bruch family, which sought to detach the Bruchs' parcel of property from the JFK district and attach said property to the Tonica school district.

The plaintiffs claim that the Bruch and JFK-Oglesby petitions compete for the same territory, and the regional board's premature consideration of the JFK-Oglesby petition adversely affects the Bruch petition.

In school district boundary cases involving multiple petitions, the principle of "first in time is first in right" is well established (*People ex rel. Pfeiffer v. Morris* (1937), 365 Ill. 470, 6 N.E.2d 864) and has continued to enjoy vitality in recent cases (*Kerwin v. Sanders* (1988), 174 Ill. App. 3d 872, 528 N.E.2d 1344; *Board of Education of Center Cass School District No. 66 v. Sanders* (1987), 161 Ill. App. 3d 723, 515 N.E.2d 280). We find, however, that the plaintiffs lack standing to raise this issue.

The purpose of the standing requirement is to preclude a person having no interest in a controversy from bringing suit. (*In re Marriage of Rodriguez* (1989), 131 Ill. 2d 273, 280, 545 N.E.2d 731.) The standing of a litigant is one of the components of the court's subject matter jurisdiction. (*In re Custody of McCuan* (1988), 176 Ill. App. 3d 421, 425, 531 N.E.2d 102.) Together with the doctrines of mootness, ripeness, and justiciability, the standing doctrine is one of the devices by which courts cull their dockets to preserve for consideration only those disputes which are truly adversarial and capable of resolution by judicial decision. *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 488, 524 N.E.2d 561.

The essence of the standing inquiry is whether the litigant is entitled to have the court decide on the merits of the dispute or of a particular issue. (*Warth v. Seldin* (1975), 422 U.S. 490, 498, 45 L. Ed. 2d 343, 354, 95 S. Ct. 2197, 2205.) State courts are not required to follow Federal law on the issue of standing, and generally, States have more liberally afforded standing to any plaintiff who shows that he has in fact been aggrieved by an administrative decision. (*Greer*, 122 Ill. 2d at 491.) In 1988, the Illinois Supreme Court declined to follow the United States Supreme Court's lead in tightening the requirements for standing. *Greer*, 122 Ill. 2d at 488-92.

Within Illinois, a plaintiff has standing if he is able to show some injury in fact to a legally recognized interest. (*Rodriguez*, 131 Ill. 2d at 280.) A proponent must assert his own legal rights and interests, rather than basing his claim for relief upon the rights of third parties. *People v. Bond* (1990), 205 Ill. App. 3d 515, 518, 563 N.E.2d 1107.

Where the effect of the challenged action is generalized, speculative or *de minimus*, the complaining party will not have standing. (*Village of Riverwoods v. Village of Buffalo Grove* (1987), 159 Ill. App. 3d 208, 212, 511 N.E.2d 184.) Whether actual or threatened, the

claimed injury must be (a) distinct and palpable, (b) fairly traceable to the defendant's actions, and (c) substantially likely to be prevented or redressed by the grant of the requested relief. (*Greer*, 122 Ill. 2d at 493.) Thus, when deciding whether a party has standing, a court must look to see if that party will benefit by the relief granted. *Rodriguez*, 131 Ill. 2d at 280.

■ Applying the foregoing principles, we conclude that the plaintiffs lack standing to assert the priority of the Bruch petition. From the record before us, it does not appear that the plaintiffs participated in the Bruch case. Neither the Bruchs nor the Tonica district objected to or otherwise participated in the JFK-Oglesby petition and suit. While the plaintiffs have attempted to assert the rights of third parties, the Bruchs, the plaintiffs failed to show injury to them by the disposition of the JFK-Oglesby petition before the Bruch petition.

The cases cited by the plaintiffs are distinguishable from the case at bar. In those cases, the party asserting the priority was either a participant in the earlier action, or a party who could otherwise demonstrate that its own rights and interests would be directly and substantially affected by the outcome of the first petition. (See, *e.g.*, *People ex rel. Simpson v. Funkhouser* (1944), 385 Ill. 396, 52 N.E.2d 1014; *Kerwin*, 174 Ill. App. 3d 872, 528 N.E.2d 1344; *Board of Education of Center Cass School District No. 66*, 161 Ill. App. 3d 723.) The Carus and Helmig families have not shown that their rights or interests would be affected by the outcome of the Bruch petition. The plaintiffs in this action are not proper parties to raise this issue before the court.

Moreover, we note in passing that the "first in time is first in right" doctrine is not absolute. A long delay in prosecuting or acting upon a petition may abrogate a priority established under the "first in time is first in right" doctrine. In *City of Countryside v. La Grange* (1962), 24 Ill. 2d 163, 167-68, 180 N.E.2d 488, the appellate court held that, where no action was taken on a petition during the eight months preceding the filing of a second petition, the first petition was deprived of its priority. According to the record before us, it appears that the Bruch petition was filed in March of 1991, more than a year before the filing of the JFK-Oglesby petition which is now before this court. Since neither the Bruchs nor the Tonica district chose to participate in this case, we need not determine whether the Bruchs have abandoned their petition or whether their petition has lost its priority due to delay.

The second issue raised by the plaintiffs is whether the JFK-Oglesby petition failed to comply with the applicable statutory provi-

sion. The petition explicitly stated that it was being filed pursuant to section 7—1 of the Illinois School Code. (Ill. Rev. Stat. 1991, ch. 122, par. 7—1.) Under section 7—1:

> "School district boundaries lying entirely within any educational service region may be changed by detachment, annexation, division or dissolution or any combination thereof by the regional board of school trustees *** when petitioned by the boards of each district affected ***." Ill. Rev. Stat. 1991, ch. 122, par. 7—1.

The plaintiffs do not contend that JFK or Oglesby has violated any requirement of section 7—1. Rather, the plaintiffs assert that JFK and Oglesby were required to file their petition under section 7—2a of the Illinois School Code. (Ill. Rev. Stat. 1991, ch. 122, par. 7—2a.) Section 7—2a(b) provides, in pertinent part:

> "Any school district with a population of less than 5,000 residents shall be dissolved and its territory annexed *** by the regional board of school trustees upon the filing with the regional board of school trustees of a petition adopted by resolution of the board of education or a petition signed by a majority of the registered voters of the district seeking such dissolution. *** The regional board of school trustees shall have no authority to deny dissolution requested in a proper petition for dissolution filed under this subsection (b), but shall exercise its discretion *** on the issue of annexing the territory of a district being dissolved, giving consideration to but not being bound by the wishes expressed by the residents of the various school districts that may be affected by such annexation." Ill. Rev. Stat. 1991, ch. 122, par. 7—2a(b).

Three primary distinctions exist between section 7—1 and section 7—2a(b) of the School Code. First, section 7—2a(b) applies only to districts with less than 5,000 residents, while section 7—1 has no population restrictions. Second, the regional board has discretion to deny dissolution requests brought pursuant to section 7—1, while the regional board has no authority to deny dissolution requested in a proper petition filed pursuant to section 7—2a(b). Third, once dissolution has occurred pursuant to a petition filed under section 7—2a(b), the decision of annexation is left to the discretion of the regional board of school trustees. Under section 7—1, annexation may be addressed in and determined by the petition filed by the affected districts.

The plaintiffs contend that, since the JFK district had a population of less than 5,000 residents, any petition for dissolution was re-

quired to be filed pursuant to section 7—2a(b). Since section 7—2a of the School Code was enacted several years after section 7—1, the plaintiffs claim that section 7—2a effectively repealed section 7—1 for smaller districts. JFK and Oglesby assert that they were free to seek dissolution and annexation under either section 7—1 or section 7—2a(b).

We look to the rules of statutory construction to find the intent of the legislature. As a starting point, a court should examine the language of the statute and the purposes to be achieved by the law. (*In re Estate of Callahan* (1991), 144 Ill. 2d 32, 43, 578 N.E.2d 985.) "We presume that statutes which relate to one subject are governed by one spirit and a single policy, and that the legislature intended the enactments to be consistent and harmonious. Even when apparent conflicts exist, we are to construe such statutes in harmony with each other, if reasonably possible." (*Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 52, 563 N.E.2d 465.) Finally, as our supreme court stated, "The sections of the School Code are *in pari materia*, and they must be construed with reference to one another in order to give harmonious meaning to the act as a whole." *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 389, 415 N.E.2d 1034.

Repeal by implication is not favored in the law, and a statute will not be held to be repealed by a subsequent enactment if a repeal can be avoided on any reasonable hypothesis. Unless the two statutes cannot be reconciled, or there is such inconsistency that the two acts cannot stand, we will not find a repeal by implication. *Bromberek School District No. 65 v. Sanders* (1988), 174 Ill. App. 3d 301, 307, 528 N.E.2d 1336.

■ After reviewing the history and language of these statutory provisions, we conclude section 7—1 and section 7—2a(b) of the School Code are not in conflict and, therefore, the statutes should be read and construed in harmony with each other. We find that section 7—2a(b) does not repeal any aspect of section 7—1. Section 7—1 and section 7—2a(b) of the School Code provide school districts with less than 5,000 residents with alternative means of effectuating dissolution and annexation.

Where a petition to change school district boundaries is filed pursuant to certain statutory provisions, those provisions control. (*Bromberek*, 174 Ill. App. 3d at 308.) As noted above, the JFK-Oglesby joint petition explicitly stated that it was being filed pursuant to section 7—1 of the Illinois School Code. JFK, Oglesby and the regional board properly followed the procedures within that statutory provision.

██ The third issue is whether the JFK-Oglesby joint petition was rendered void when, after the petition was submitted to the regional board, Oglesby unilaterally decided that it would extend offers of employment to all JFK teachers once annexation occurred. We note that, at the public hearing, Oglesby informed the regional board of its intention to hire the teachers. The plaintiffs have provided this court with no authority which supports their assertion that Oglesby's administrative decision somehow nullified the petition for dissolution and annexation. We find that the plaintiffs' position is without merit.

██ The final issue raised by the plaintiffs is whether the regional board erred in granting the JFK-Oglesby petition based upon the facts of this case. On administrative review, this court's role is to determine whether the decision is supported by the evidence. If this court finds that the correct statutory standards have been applied, and that the decision below is supported by substantial evidence, then this court must affirm the decision. (*Bromberek*, 174 Ill. App. 3d at 310.) Our review of the record shows that the correct statutory standards were applied and the regional board's decision was supported by substantial evidence.

For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

SLATER and BRESLIN, JJ., concur.