2016 IL App (1st) 152670

FIRST DIVISION
December 19, 2016

No. 1-15-2670

| | | |
|---|---|---|
| THE VILLAGE OF WILLOW SPRINGS, | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE VILLAGE OF LEMONT, a Municipal Corporation; | ) | |
| ROUTE 83 PROPERTIES LLC, an Illinois Limited | ) | Appeal from the |
| Liability Company; ROUTE 83 PROPERTIES II LLC, an | ) | Circuit Court of |
| Illinois Limited Liability Company; GRANT ROAD, | ) | Cook County, |
| LLC, an Illinois Limited Liability Company; ROBERT | ) | |
| BILY and LOUIS DINEFF, Individually and as Beneficial | ) | No. 15 CH 778 |
| Owners of a Chicago Land Trust Dated 6/3/09; GOLD | ) | |
| COAST DISTRIBUTING COMPANY, an Illinois | ) | Honorable |
| Corporation and as Beneficial Owner of a Chicago Land | ) | Diane J. Larsen, |
| Trust Dated 6/3/09; and CHICAGO TITLE LAND | ) | Judge Presiding. |
| TRUST COMPANY, Under the Trust Dated 6/3/09 and | ) | |
| Known as Trust No. 8002353226, | ) | |
| | ) | |
|     Defendants, | ) | |
| | ) | |
| (The Village of Lemont, Route 83 Properties LLC, and | ) | |
| Route 83 Properties II LLC, Defendants-Appellees). | ) | |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Presiding Justice Connors and Justice Harris concurred in the judgment and opinion.

## OPINION

¶ 1    This is an appeal from the circuit court's dismissal of a complaint in which one village,

Willow Springs, sought to enjoin its neighboring village, Lemont, from approving a zoning

reclassification and a proposed property development. Willow Springs also sued the owners and

proposed developers. The circuit court dismissed the complaint, concluding that Willow Springs

lacked standing to contest the zoning reclassification, which had been approved by the time of the circuit court's ruling, and lacked standing "at th[at] time" to challenge the remainder of the development application which Lemont had not yet approved. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 2                                    BACKGROUND

¶ 3       The proposed development is located at 13011 Grant Road in Lemont, Illinois (Grant Road property). Willow Springs filed a complaint against Lemont and those individuals and entities that had applied to Lemont for the rezoning and development of the Grant Road property (collectively applicants), including the property owners (Grant Road, LLC, and the beneficiaries of Chicago Title Company Trust No. 8002353226 (Robert Bily, Louis Dineff, and Gold Coast Distributing Company)) and prospective buyers of the property (Route 83 Properties LLC and Route 83 Properties II LLC (collectively Route 83 entities)).

¶ 4       In its complaint, Willow Springs alleged that "[t]he Village of Lemont and the Village of Willow Springs are adjacent to each other" and that the Grant Road property—"the vacant area located near Route 83 and Archer Avenue"—"is located in close proximity to the Village of Willow Springs and borders Cook County Forest Preserve Property." According to Willow Springs, the applicants "intend[ed] to develop the [s]ubject [p]roperty as a heavy industrial development[,] including concrete crushing/recycling, [a] contractor['s] office, semi-truck parking, [a] concrete batching plant, construction demolition debris recycling, and other related uses." Willow Springs alleged that, in accordance with this plan, the applicants "submitted an application to the Village of Lemont for rezoning [of the property] from R-1 Single-Family Residential District to M-3 Heavy Manufacturing District," along with a "preliminary plat of [the] subdivision and a [proposed] special use for a Preliminary Planned Unit Development" to

use the property as a heavy industrial development. Willow Springs further alleged that the applicants' proposed rezoning and development of the subject property was "inconsistent with the zoning of the surrounding area," which it described as "light industrial, outdoor recreation and open space," and would "result in substantial negative impacts for the surrounding area[,] including but not limited to noise, traffic, and increased hazardous and unwanted debris."

¶ 5    Willow Springs asserted two claims for injunctive relief: count I, against Lemont and the property owners, asserted that Lemont's approval of the application for rezoning, the preliminary plat of the subdivision, and a special use for the Preliminary Planned Unit Development would be "arbitrary unreasonable and capricious," would "bear no substantial relation to public health, safety or welfare[,] and would result in special injury and damage to the Plaintiff in its corporate capacity." Although Willow Springs did not label it as such, this is a constitutional challenge to a zoning change under the "*La Salle*" factors, as set out by the Illinois Supreme Court in *La Salle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40, 46-47 (1957). Count I also alleged that Lemont's approval of the application "constitutes a public nuisance." Count II was brought against all of the applicants and alleged that the "proposed development constitutes a common law public nuisance."

¶ 6    Willow Springs alleged, on information and belief, "that unless restrained or enjoined by order of th[e] court, the Village of Lemont and Owners will proceed with the application and proposed development." Willow Springs further alleged that it had a "real interest in the proposed development and development area," that approval of the application "is injurious to Willow Springs in that, among other things, it negatively affects the quality of life by the Village residents, property values within its borders, and the Village's growth and development," and that approval of the application "will result in irreparable harm to Willow Springs" because "the

proposed development is inconsistent with the character of the adjoining area[,] *** property values in [Willow Springs] will diminish[,] municipal property tax revenue will be lost[,] *** roads will be more congested resulting in safety hazards[, and] the development will result in the degradation of air quality."

¶ 7      On April 8, 2015, Lemont moved to dismiss that portion of count I that sought to enjoin the zoning reclassification pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2014)). Lemont argued that dismissal was proper under section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)) because Willow Springs failed to allege either facts supporting a right to the requested injunctive relief or facts demonstrating that approval of the rezoning request would be unreasonable and arbitrary. Lemont also contended that dismissal of Willow Springs's challenge to the zoning reclassification was proper under subsection 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2014)) for lack of standing because Willow Springs "ha[d] not and c[ould] not allege that it own[ed] or control[led] any property contiguous to or even near the [s]ubject [p]roperty" and was therefore required to "allege and eventually prove that the rezoning would have a substantial, direct and adverse injury [on its] 'corporate capacity,' " which it had not done. Finally, Lemont argued that dismissal was proper, pursuant to subsection 2-619(a)(1) (735 ILCS 5/2-619(a)(1) (West 2014)), because the parties' dispute was not ripe for resolution since Lemont had yet to give its approval to the proposed zoning change.

¶ 8      Lemont attached to its motion to dismiss Cook County zoning records showing that, prior to Lemont's annexation of the Grant Road property, a majority of the parcels comprising it were zoned by Cook County as I-3, Intensive Industrial District. It also attached a nine-page report prepared by its planning and economic development department (PEDD), which described the

characteristics of the Grant Road property, discussed the history of its zoning and the zoning of nearby properties, summarized the proposed zoning change and plan of development, and analyzed the plan's potential impact. The PEDD made clear in its report that the proposed development should not be approved as it was originally submitted; significant further studies would first need to be conducted and appropriate changes or improvements made to the plan.

¶ 9     One of the property owners, Grant Road, LLC, filed a separate motion to dismiss counts I and II in their entirety. Grant Road adopted the arguments made by Lemont with respect to the approval of the zoning reclassification in count I and further argued that "[t]he allegation that a party is merely attempting to have a property rezoned *** does not state a cause of action for [the] violation of [a] zoning ordinance." Grant Road also argued that count II should be dismissed pursuant to section 2-615 of the Code because Willow Springs failed to either allege facts supporting a right to injunctive relief or state a cause of action for a public nuisance. Grant Road also sought dismissal pursuant to subsection 2-619(a)(1) of the Code because the claim was "based upon an alleged nuisance that might occur at a future date and therefore [wa]s not ripe." The Route 83 entities filed a motion to dismiss count II, adopting Grant Road's arguments.

¶ 10     In its responses to the motions to dismiss, Willow Springs emphasized that it sought to challenge the "entire development application," not just the proposed zoning reclassification. According to Willow Springs, approval of the application would cause it to suffer the sort of injury recognized by Illinois courts as conferring standing on a municipality to challenge the zoning ordinances of other municipalities: "a direct, substantial, and adverse effect upon the *** performance of [its] corporate obligations." Willow Springs maintained that its claims were ripe for decision because they related to a specific proposed development, such that there was "no uncertainty as to the type of development that [wa]s proposed" and "the threatened harm" to it

"present[ed] a known threat" and a "justiciable controversy." Willow Springs contended that it sufficiently stated a claim for injunctive relief because its allegations detailed the negative effects that would result from the proposed development, the special injury and damage Willow Springs would suffer if the plan was approved, and the lack of an adequate remedy at law.

¶ 11    While the suit was pending, Lemont adopted an ordinance approving the zoning reclassification but making "no determination" as to the remainder of the development application. Lemont then withdrew its argument that Willow Springs's challenge to the zoning reclassification was not ripe for adjudication. However, Lemont stood on its remaining grounds for dismissal of any challenge to the zoning reclassification, including Willow Springs's lack of standing.

¶ 12    Without argument, the circuit court issued an order granting each of the motions to dismiss, stating:

> "1)    Plaintiff's Complaint is dismissed in its entirety due to there being no application decision by the Village of Lemont. Therefore, Willow Springs lacks standing to contest the zoning and development application at this time.
>
> 2)    The Village of Willow Springs lacks standing to challenge the rezoning of the property."

¶ 13                                JURISDICTION

¶ 14    The circuit court entered its final order dismissing all of Willow Springs's claims on September 4, 2015. Willow Springs timely filed its notice of appeal on September 15, 2015. We therefore have jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below in civil cases. Ill. S. Ct. Rs. 301 (eff. Feb. 1, 1994),

303 (eff. Jan. 1, 2015).

¶ 15                                    ANALYSIS

¶ 16    On appeal, the parties make a number of sometimes overlapping arguments, not all of which are relevant to our determination of whether the circuit court's dismissal was proper. Willow Springs argues that it has standing to seek injunctive relief because it alleged that the proposed zoning reclassification and development of the Grant Road property would cause substantial, direct, and adverse injurious effects to its corporate capacity. Willow Springs further contends that its claims are ripe, noting that Lemont formally withdrew its ripeness argument with respect to the zoning reclassification when it approved that change, and arguing that its claims stemming from the anticipated approval of the remainder of the development application are "clearly fit for a judicial decision as there is no uncertainty as to the type of development proposed."

¶ 17    In response, Lemont argues that the harm Willow Springs alleged it would suffer stemmed not from the zoning reclassification but from Willow Springs's unsupported assumption that the specific development proposal will be approved as submitted. Lemont argues that Willow Springs has failed to demonstrate the requisite injury to have standing to challenge a mere zoning reclassification by a neighboring municipality. Lemont's briefing does not address whether Willow Springs would have standing to object to the specific development that has been proposed.

¶ 18    Willow Springs also makes an argument that the circuit court erroneously failed to take as true that, as alleged in its complaint, Willow Springs and Lemont are adjacent to one another, instead relying on the unsupported assertion in Lemont's motions to dismiss that Willow Springs neither owns nor controls any property that is contiguous to the subject property and therefore

lacks standing as an adjacent landowner. According to Willow Springs, the circuit court improperly resolved this question of material fact at the motion to dismiss stage, without affording the parties the opportunity for an evidentiary hearing. Lemont, however, points out that there is no question that Willow Springs and Lemont are adjacent to one another but contends that this is irrelevant because it does not give Willow Springs standing to bring this case.

¶ 19    The Route 83 entities argue that count II for injunctive relief based on a prospective nuisance was properly dismissed as premature. They alternatively argue that Willow Springs forfeited its arguments against dismissal of count II by failing to specifically reference that claim in its opening brief.

¶ 20    The owners of the Grant Road property have submitted no arguments on appeal.

¶ 21    Certain of the defendants' arguments in favor of dismissal rest on section 2-615 (735 ILCS 5/2-615 (West 2014)) and others on section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)). In either case, our review is *de novo*, and we may affirm on any basis in the record. *People v. Wright*, 194 Ill. 2d 1, 16 (2000).

¶ 22    A motion to dismiss brought pursuant to section 2-615 of the Code is a facial challenge asserting that the complaint fails to state a cause of action upon which relief can be granted. 735 ILCS 5/2-615 (West 2014); *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 147 (2002). "The proper inquiry is whether the well-pleaded facts of the complaint, taken as true and construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Loman v. Freeman*, 229 Ill. 2d 104, 109 (2008). A complaint is sufficient where the facts alleged indicate that recovery is possible; it need not be certain. *Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154, 160-61 (1986). Because Illinois is a fact-pleading jurisdiction, however, a plaintiff must make sufficient factual allegations to bring its claim within

a legally recognized cause of action. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006).

¶ 23   A motion to dismiss pursuant to section 2-619 of the Code "raises defects, defenses, or other affirmative matters that appear on the complaint's face or that are established by external submissions acting to defeat the complaint's allegations." *Burton v. Airborne Express, Inc.*, 367 Ill. App. 3d 1026, 1029 (2006). The affirmative matter relied upon "must be more than just evidence that refutes a well-pled fact of the complaint." *Buckner v. O'Brien*, 287 Ill. App. 3d 173, 176 (1997). It must be in the nature of "a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Glisson v. City of Marion*, 188 Ill. 2d 211, 220 (1999). Although "[a] section 2-619 motion admits both the truth of the facts alleged in support of the claim and the legal sufficiency of the claim, *** it also raises affirmative matters which it asserts defeat the claim. As to those affirmative matters, there is no admission of either truth or sufficiency." *Buckner*, 287 Ill. App. 3d at 178. "Conclusions of law and conclusions of fact unsupported by specific factual allegations are [also] not taken as true." *Id.* at 176.

¶ 24   As discussed in greater detail below, there were two fundamental problems with the complaint in this case that warranted dismissal of Willow Springs's claims. Count I was a constitutional challenge, seeking to enjoin government action that Willow Springs contended was arbitrary and capricious. However, to the extent that Willow Springs sought in count I to enjoin the zoning reclassification of the Grant Road property from R-1 to M-3, it could not demonstrate that, as a neighboring municipality, it was "substantially, directly and adversely affected in its corporate capacity" by the reclassification itself and therefore lacked standing to assert the challenge. *Village of Barrington Hills v. Village of Hoffman Estates*, 81 Ill. 2d 392,

398 (1980). Accordingly, this portion of Count I was properly dismissed pursuant to section 2-619(a)(9) of the Code. See *A Plus Janitorial Co. v. Group Fox, Inc.*, 2013 IL App (1st) 120245, ¶ 15 (noting that lack of standing is an "affirmative matter" properly raised under section 2-619(a)(9)). And to the extent that Willow Springs sought in count I to enjoin future action and prospectively prevent Lemont from approving the proposed development, the challenge was improper. Illinois courts have long refused to preemptively enjoin legislative action, holding that challenges are more properly made to a law's enforcement once it has been enacted. See *Stevens v. St. Mary's Training School*, 144 Ill. 336, 351 (1893).

¶ 25    To the extent that Willow Springs alternatively sought to enjoin the development of the Grant Road property as a public nuisance—as it clearly alleged in count II of the complaint and somewhat confusingly also included as an allegation in count I of the complaint—it simply failed to allege sufficient facts warranting the extreme remedy of an injunction to block a proposed development, *i.e.*, facts establishing the high probability that the development would constitute a public nuisance. *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 689 (2010). Accordingly, Willow Springs's claim (or claims) based on a future public nuisance was properly dismissed pursuant to section 2-615 of the Code.

¶ 26                                A. Constitutional Challenge

¶ 27    We agree with Lemont and with the circuit court that Willow Springs lacks standing to challenge the zoning reclassification of the Grant Road property from R-1 to M-3. Although Lemont does not address Willow Springs's challenge to the remainder of the development package, we conclude that dismissal of the claim in its entirety was proper because, since there has been no approval yet of the proposed development, there is no government action that can properly be challenged at this time, other than the zoning reclassification.

¶ 28    A zoning ordinance may be challenged on constitutional grounds as arbitrary and capricious and unrelated to public health, safety, and general welfare under the "*La Salle* factors." *La Salle*, 12 Ill. 2d at 46-47. A municipality's standing to bring such a challenge to another municipality's zoning ordinances requires "a clear demonstration that [the challenging municipality] would be substantially, directly and adversely affected in its corporate capacity." *Barrington Hills*, 81 Ill. 2d at 398. This is a specific application of the general rule that "a plaintiff has standing if he is able to show some injury in fact to a legally recognized interest." *Helmig v. John F. Kennedy Community Consolidated School District No. 129*, 241 Ill. App. 3d 653, 658 (1993). "Whether actual or threatened, the claimed injury must be (a) distinct and palpable, (b) fairly traceable to the defendant's actions, and (c) substantially likely to be prevented or redressed by the grant of the requested relief." *Helmig*, 241 Ill. App. 3d at 658-59.

¶ 29    We recognize that lack of standing is an affirmative defense and it is not the plaintiff's burden to allege facts establishing standing in the first instance. *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 24. However, where the defense is raised as an affirmative matter and is supported by affidavits or other evidentiary materials, the burden shifts to the plaintiff to submit evidence that it has standing. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997).

¶ 30    Lemont attached to its motion to dismiss public records indicating that most, if not all, of the parcels comprising the Grant Road property were zoned by Cook County for industrial use before the property was annexed by Lemont and rezoned by default by Lemont to residential use. Lemont also attached a report prepared by its PEDD that was created before the start of this litigation and that indicates that the Lemont 2030 Comprehensive Plan calls for the site to be industrial, the land's current use is listed as "[j]unk yard, home/office, truck parking, billboards,"

and the surrounding property consists of either unincorporated county land, forest preserve/public land, or land zoned for industrial or intensive industrial use. The report concludes that "continued industrial use of the site is compatible with surrounding land uses."

¶ 31    Although these documents were not authenticated by an affidavit made on personal knowledge as contemplated by Illinois Supreme Court Rule 191 (Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013)), any objection to their use was forfeited, as Willow Springs has never objected, even on appeal, to Lemont's reliance upon them in connection with its section 2-619 motion. *Cf. Kolakowski v. Voris*, 83 Ill. 2d 388, 398 (1980) ("[t]he general rule in Illinois is that the sufficiency of an affidavit cannot be tested for the first time on appeal where no objection was made either by a motion to strike, or otherwise, in the trial court" (internal quotation marks omitted)). Indeed, in its own statement of facts on appeal, Willow Springs cites the PEDD's report for the proposition that, upon annexation in 2009, "[t]he property was essentially an auto salvage yard, also known as a 'junkyard,' " and was "automatically re-zoned from M-3, Intensive Industrial Use to R-1, Single-Family Detached Residential." Judicial notice may furthermore be taken of publicly available Cook County zoning ordinances, including the Cook County zoning ordinances that were in effect prior to annexation. *City of Countryside v. Oak Park National Bank*, 78 Ill. App. 2d 313, 315 n.1 (1966) ("there is no question but that both the trial court and this court may take judicial notice of [a] plaintiff's zoning ordinance without its having been introduced into evidence"). Lemont thus submitted evidence that Willow Springs would not be adversely affected by the zoning reclassification and the burden shifted to Willow Springs to demonstrate some adverse affect. Willow Springs, however, presented no counteraffidavits or evidence in support of its standing.

¶ 32    Instead of presenting evidence, Willow Springs argued in the circuit court and argues on

appeal, that, like the municipalities who sued in *Barrington Hills* and in *Village of Northbrook v. County of Cook*, 126 Ill. App. 3d 145 (1984), a later case that applied the test for standing in *Barrington Hills*, it has properly alleged a use of land by a neighboring municipality that gives it standing to challenge Lemont's rezoning of the Grant Road property. We will briefly discuss these cases, which we find to be quite different from this case.

¶ 33    In *Barrington Hills*, two villages sought to enjoin a neighboring municipality from approving a plan for the construction of a 6,000-seat open-air music theater with additional space for 14,000 attendees, parking spaces for 6,000 to 7,500 vehicles, commercial concession activities, and electronic amplification for rock concerts and other musical performances. *Barrington Hills*, 81 Ill. 2d at 393-94. The plaintiffs alleged in their complaint that, although the property in question was some distance from the defendant's own residential areas, it was in close proximity to residential areas that were in the plaintiff villages' boundaries. *Id.* at 395. The plaintiffs asserted that they were harmed by the decision to annex and rezone the property to permit the development, which they contended would substantially increase sound levels, result in a degradation of the ambient air quality from increased exhaust emissions, adversely impact property values, and require the plaintiffs to spend money to remove litter and debris from the area and to provide additional police officers to handle increased traffic congestion. *Id.* at 395-96. Our supreme court held that those allegations, which were admitted for purposes of a motion to dismiss, sufficiently established "direct, substantial and adverse effects upon *** the performance of their corporate obligations, thus giving [the plaintiffs] a real interest in the subject matter of the controversy." *Id.* at 398.

¶ 34    *Northbrook* was a suit to enjoin the issuance of a building permit by Cook County for two 10-story office buildings on property adjacent to the Village of Northbrook. 126 Ill. App. 3d at

146. Northbrook alleged that the development was inconsistent with the residential character of the adjoining area; property values in Northbrook would diminish; roads would be more congested, requiring additional police officers to direct traffic; tax revenue would diminish with declining property values; and the development would overload insufficient storm water drainage systems and place an increased burden on well water supplies, thereby affecting Northbrook's ability to provide fire protection. *Id.* at 147. The appellate court concluded that these allegations met the *Barrington Hills* test for standing because they "sufficiently allege[d] injury to [Northbrook] in its corporate capacity." *Id.*

¶ 35    Willow Springs argues that the kinds of harm that it alleged in this case are quite similar to those alleged in *Barrington Hills* and *Northbrook*, involving decreased tax revenue due to lower property values, increased municipal expenditures for road repairs, and lower air quality. While that is correct, there are several important distinctions between this case and those cases.

¶ 36    First, in this case, any inference that the rezoning classification on its own will cause the generalized allegations of harm alleged in the complaint has been expressly rebutted in the materials submitted in support of the motion to dismiss. Here, Lemont submitted evidence in support of its section 2-619 motion that demonstrated that the zoning reclassification did not represent any change to the *status quo* but rather was in line with both the current use of the property and its zoning prior to annexation. As such, there is no reason to accept Willow Springs's conclusory allegation that the zoning reclassification will cause a burden to it as a neighboring municipality. This stands in contrast to the approvals of an open-air theatre in *Barrington Hills* or a pair of 10-story buildings in *Northbrook*, which represented substantial changes to the *status quo*. Although the submission of this evidence caused the burden to shift to Willow Springs to submit evidence affirmatively establishing its standing, Willow Springs

instead chose to rely on its generalized allegations of harm, arguing that they must be taken as true. However, allegations that "touch on the affirmative matters raised in the 2-619 motion," are *not* taken as true for purposes of ruling on a motion to dismiss. *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1073 (1992).

¶ 37    Moreover, we reject Willow Springs's argument that we should assess its standing based on the proposed development as a whole, rather than the zoning reclassification alone. Although Willow Springs alleges on information and belief that, "unless restrained or enjoined by order of this court, the Village of Lemont and Owners [of the Grant Road property] *will* proceed with the application and proposed development" (emphasis added), it fails to allege any facts on which this belief is based. The PEDD's report indicates that Lemont does not intend to approve the remainder of the proposed development application as it was originally submitted. The limited approval recommended in the report is expressly conditioned on the applicants conducting further studies, submitting additional information, and proposing design modifications to address a number of concerns Lemont had with their initial proposal. Willow Springs may be correct that "[t]here is no uncertainty as to the type of development that [wa]s proposed," but the affirmative evidence submitted by Lemont indicates that there is significant uncertainty as to the type of development that might one day be *approved* by Lemont.

¶ 38    This is in contrast to *Barrington Hills*, where the defendant municipality had already adopted the three ordinances allowing for the annexation and rezoning of the property in question and the construction of an open-air theater. *Barrington Hills*, 81 Ill. 2d at 394-95. It is also different from *Northbrook*, where the challenged zoning ordinance was adopted years prior and the developers had already applied for a building permit. *Northbrook*, 126 Ill. App. 3d at 146-47. Neither of those cases involved a request to enjoin an ordinance that had not yet been

adopted.

¶ 39    Indeed, there is a significant problem with Willow Springs's suggestion that a court may prospectively enjoin a municipality from adopting or amending an ordinance. Illinois courts have long recognized that "the restraining power of the courts should be directed against the enforcement, rather than the passage, of unauthorized orders and resolutions, or ordinances, by municipal corporations." *Stevens*, 144 Ill. at 351. Our supreme court has explained that "[c]ourts are endowed by the constitution with judicial power, only," they "cannot obstruct the exercise of legislative functions," and "have no general power to consider proposed and uncompleted legislation to determine whether an act will be valid or invalid *if* enacted into law." (Emphasis added.) *Spies v. Byers*, 287 Ill. 627, 631 (1919). This continues to be the law in Illinois. See, *e.g.*, *Spurling v. Reich*, 336 Ill. App. 576, 580 (1949) (reversing the grant of a temporary injunction restraining a municipality from adopting an ordinance authorizing the installation of parking meters where "the obvious and predominate purpose of [the] suit was to have [the ordinance] declared invalid prior to the time it had passed through all the legislative processes necessary to give it life" (internal quotation marks omitted)).

¶ 40    While *Northbrook* involved a building permit that had not yet been issued, such permits are issued, in compliance with applicable zoning ordinances and building codes, by the Cook County department of building and zoning, not by the Cook County board of commissioners, which is the legislative body that adopts the county's zoning ordinances (compare https://www.cookcountyil.gov/agency/building-and-zoning-0 (visited Dec. 12, 2016) and https://www.cookcountyil. gov/board-of-commissioners/ (visited Dec. 12, 2016)). Thus, in that case, it was appropriate for the court to consider whether Northbrook had standing to enjoin Cook County from issuing the permit, since the question was one of zoning enforcement, rather

than zoning legislation.

¶ 41    We express no opinion on the merits of Lemont's position that Willow Springs "c[ould] never meet [the *Barrington Hills*] standard for just the rezoning of the [Grant Road property]" because "[r]ezoning, by itself, is not a specific proposal which could lend itself to specific impacts upon another municipality." Instead, we hold that Willow Springs's standing to bring this claim must rise or fall on the only ordinance that has thus far been adopted—that approving the zoning reclassification—and we affirm the circuit court's dismissal on the basis that Willow Springs did not meet its burden in this case of demonstrating that it would suffer the substantial adverse effects necessary for it to have standing to challenge Lemont's ordinance.

¶ 42    Finally, in what we view as a classic "red herring," we address the argument by Willow Springs that the circuit court improperly decided whether Willow Springs and Lemont are adjacent to one another. Willow Springs insists that Lemont improperly contradicted Willow Springs's well-pleaded allegation that the two municipalities are in fact adjacent when it stated in its motion to dismiss that Willow Springs "has not and cannot allege that it owns or controls any property contiguous to or even near the Subject Property." As Lemont makes clear in its brief in this case, this is simply a nonissue.

¶ 43    Lemont never argued that the two villages were not "adjacent" and has never contested the allegation that the municipalities share a border. Rather, Lemont argued that Willow Springs does not itself own land near the subject property. This statement was made to demonstrate that Willow Springs could not have standing under section 11-13-15 of the Illinois Municipal Code (65 ILCS 5/11-13-15 (West 2014)), which provides an owner or tenant of real property located within 1200 feet of property that violates a municipal ordinance with standing in certain circumstances. Since Willow Springs has never indicated an intent to rely on section 11-13-15

17

and, indeed, that section would not be a basis for a claim brought by one municipality against another (*Dunlap v. Village of Schaumburg*, 394 Ill. App. 3d 629, 638-39 (2009)), Lemont was simply addressing an argument that was never made. Adjacency is not an issue in this case and no improper factual finding, regarding adjacency or anything else, was made by the circuit court.

¶ 44                                    B. Public Nuisance

¶ 45    The thrust of count II and an alternative claim in count I is that the proposed development of the Grant Road property would be a public nuisance. While we agree with Willow Springs that the circuit court would have authority to bar the applicants from constructing a public nuisance, theoretically even before it was fully approved, we do not believe that the complaint alleges sufficient facts to state such a claim.

¶ 46    As a preliminary matter, the Route 83 entities contend that Willow Springs forfeited any argument in reference to count II by failing to specifically address this count in its opening appellate brief. We do not agree. In its opening appellate brief, Willow Springs plainly argues that its case as a whole—so in effect *both* of its claims—was ripe for adjudication by the circuit court. Accordingly, we find no forfeiture.

¶ 47    We likewise deny the Route 83 entities' motion, taken with this appeal, to strike Willow Springs's reply brief addressing count II, in which Willow Springs argues both that injunctive relief may properly be ordered to prevent a prospective nuisance and that it sufficiently alleged the elements of a public nuisance. Because we find that the issues of standing, ripeness, and the requirements for stating a claim for injunctive relief are somewhat intertwined in this case, we will consider these arguments as an extension of those made by Willow Springs in its opening brief that its claims were ripe for adjudication. Our consideration of these arguments on the merits nevertheless persuades us that the circuit court properly dismissed any claim to enjoin a

prospective public nuisance.

¶ 48     The Route 83 entities begin with the broad suggestion that a plaintiff seeking to enjoin a proposed development may never do so prior to its approval and construction. This is not correct. This court has specifically recognized that "[a] plaintiff may seek injunctive relief for a prospective nuisance." *Helping Others*, 406 Ill. App. 3d at 689 (citing *Village of Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 21-22 (1981)). However, the allegations necessary to bring such a claim may not be based on speculation or conjecture. Our supreme court has cautioned that injunctive relief "will not be granted to allay unfounded fears or misapprehensions." *Barco Manufacturing Co. v. Wright*, 10 Ill. 2d 157, 166 (1956). Unless the activity complained of is a *per se* nuisance or the existence of a nuisance has already been legally established, "[i]t is only in *extreme cases* *** that a court of equity will take jurisdiction to abate a nuisance by injunction." (Emphasis added.) *City of Kankakee v. New York Central R.R. Co.*, 387 Ill. 109, 117 (1944). To succeed on such a claim, a plaintiff must demonstrate that it is "highly probable" that the anticipated activity will lead to a nuisance; "if the possibility is merely uncertain or contingent [the plaintiff] may be left to his remedy after the nuisance has occurred." (Internal quotation marks omitted.) *Helping Others*, 406 Ill. App. 3d at 689, 694 (denial of permanent injunction affirmed where the plaintiff expressed concerns regarding odors that might be caused by the construction of a nearby livestock facility, but supported those concerns with few facts and failed to address numerous measures the facility planned to take to control such odors); see also *Nichols v. City of Rock Island*, 3 Ill. 2d 531, 538-39 (1954) (grant of permanent injunction reversed where future injury resulting from the construction of a public pool and parking garage was speculative and "based upon such highly conjectural items as increased traffic"); *Union Drainage District No. 6 v. Manteno Limestone Co.*, 341 Ill. App. 353, 367-68 (1950) (grant of

permanent injunction reversed where there was, at most, only the potential for the defendant's proposed quarry operations to overload present drainage systems at some time years in the future). This is consistent with the general principle that "[a]n injunction is an equitable remedy to be used sparingly, with judicial restraint and due continence, and only in a clear and plain case." *In re Marriage of Schwartz*, 131 Ill. App. 3d 351, 353 (1985).

¶ 49    In the context of a motion to dismiss, the absence of allegations that, if proved, would establish such an extreme case is a failure to allege facts on which injunctive relief could be granted. *Board of Education of School District 85$^{1/2}$ v. Idle Motors, Inc.*, 339 Ill. App. 359, 369 (1950). In *Idle Motors*, for example, a school board and parents of elementary school students sought to enjoin the construction and use of a partially completed public garage for the storage and repair of automobiles. *Idle Motors*, 339 Ill. App. at 362. By the time the case was appealed, the building was completed but was not yet operational. *Id.* at 367-68. The appellate court held that "[t]he test of whether the operation of the business [wa]s a nuisance depend[ed] upon how the business [wa]s actually conducted." *Id.* at 369.

¶ 50    The same result was reached in *Mills v. Village of Milan*, 68 Ill. App. 2d 63, 69 (1966), where plaintiffs sought to enjoin the operation of a public dump. The appellate court affirmed the circuit court's dismissal of the plaintiff's complaint, concluding both that the operation of a public dump was not a *per se* nuisance and "the allegations of [the] plaintiffs' complaint did not establish that there was a nuisance in fact." *Mills*, 68 Ill. App. 2d at 69. The court held that the "mere[ ] *** allegation that there w[ould] be a proposed dumping which would create a nuisance and that odors would emanate from the dump" was not sufficient to state a claim for injunctive relief because "[i]njunctions cannot be based upon speculation or conjecture where the activity to be undertaken is presumptively valid and legal." *Id.* Because the collection and disposal of

garbage fell within the defendant municipality's police power, the court concluded that the "record disclose[d] no specific allegations of fact which would justify the granting of injunctive relief." *Id.*

¶ 51 The allegations in this case are exceedingly generic, rather than specific. It is alleged that "property values will diminish," that "tax revenue will be lost," and that "roads will be more congested." Willow Springs has alleged, at most, a possibility of future harm that is dependent on the specific ways in which the property may be used. Not only are the proposed new facilities at the Grant Road property not yet operational, they have not been constructed, or approved for construction. We fail to see how it can reasonably be inferred, from the mere filing of the development application or from the other allegations in the complaint, that an injunction is appropriate.

¶ 52                                    CONCLUSION

¶ 53 For the foregoing reasons, we affirm the circuit court's dismissal of Willow Springs's claims for injunctive relief.

¶ 54 Affirmed.